In re Jay Worley KINGSLEY and Charlene Kay Kingsley, Debtors.

AGRIBANK, FCB, and Danny R. Nelson, Trustee, Plaintiffs,

v.

Jay Worley KINGSLEY and Charlene Kay Kingsley, Defendants.

Bankruptcy No. 93–30108.
Adv. No. 93–3017.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 5, 1994.

Jay Worley Kingsley and Charlene Kay Kingsley, pro se.

Gregory J. Powell, Roberts, Fleischaker, Williams & Powell, Joplin, MO, for Agribank.

Danny R. Nelson, Springfield, MO, for trustee.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Agribank, FCB ("Agribank") and Danny R. Nelson, Chapter 7 trustee, have moved for summary judgment on their separate complaints objecting to the discharge of Jay Worley Kingsley and Charlene Kay Kingsley ("debtors"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I grant plaintiffs' motion for summary judgment in part, and will order that debtors' discharge be denied. This Memorandum Opinion constitutes my findings of fact and conclusions of law.

## FACTUAL BACKGROUND

This adversary action is but one proceeding in a variety of cases and proceedings involving these debtors over the past eight years. Those proceedings relate to a promissory note and deed of trust ("Note") executed by debtors on June 20, 1979, in exchange for a loan by Agribank of $282,000.00. Such Note was secured by real estate located in Lawrence County, Missouri. Two significant events have culminated in this bankruptcy and these objections to discharge. First, in 1985 debtors defaulted in payments due Agribank. And second, upon the deaths of her parents, debtor Charlene Kingsley became entitled to, and received a portion of, an inheritance.

Due to debtors' default, Agribank initiated foreclosure proceedings on the Missouri real estate, and scheduled a foreclosure sale for August 24, 1987. In response, on August 21, 1987, debtors filed their first Chapter 12 bankruptcy case. They dismissed that bankruptcy case in September of 1987, and filed suit against Agribank in the Circuit Court of Lawrence County, Missouri for breach of debtors' forbearance right. Agribank removed that action to the District Court for the Western District of Missouri (Case No. 87–5095–CV–SW–1), and filed a counterclaim demanding the principal and interest due on the Note. While that case was pending in District Court, Agribank again noticed a foreclosure sale for August 4, 1989.

On the day of the second scheduled foreclosure sale, debtors filed their second Chapter 12 bankruptcy case (Case No. 89–03261), this time *pro se*. That same date Agribank moved the Bankruptcy Court for an emergency hearing to lift the automatic stay and allow the foreclosure sale to proceed. Debtors did not attend this hearing even though they had notice and were instructed to make themselves available. The Honorable Karen M. See granted Agribank's motion for a lift of stay and ordered the proceeds of the foreclosure sale escrowed pending a hearing scheduled for August 10, 1989, on Agribank's motion to dismiss. Agribank purchased the land at the foreclosure sale. The balance due at the time of foreclosure was $545,-000.00. On August 28, 1989, Judge See dismissed the bankruptcy case, finding it was filed in bad faith. Judge See also found no illegality or impropriety in Agribank's actions preceding the foreclosure. Debtors then exercised their right of redemption and pur-

chased the property from Agribank on October 12, 1989, for the appraised value of $313,-500.00. The sum paid to Agribank by debtors at the time of redemption was applied to the outstanding balance on the note.

Thereafter, debtors moved to dismiss their federal law claims against Agribank, so that the remaining claims could be remanded to state court where debtors apparently preferred to be. The District Court granted debtors' motion to dismiss their federal claims against Agribank on June 4, 1990, but assessed attorney's fees and costs of $31,-884.04 against the Kingsleys, and enjoined them from refiling those federal claims, or substantially similar claims, against Agribank until they paid such fees and costs. The remaining state law claims were remanded to the Circuit Court of Lawrence County, Missouri (Case No. 387–264CC) and reinstated on February 8, 1991. Agribank then moved for summary judgment on the state law claims. On May 1, 1992, the state court granted such motion, and entered judgment against the Kingsleys in the sum of \$387,-148.38, which represented the deficiency remaining following debtors' redemption, plus interest and costs of collection.

In the meantime, after debtors' loan with Agribank went into default, the mother and father of Charlene Kingsley died. Mrs. Kingsley and Evelyn Marshall, Charlene Kingsley's sister, were co-trustees, and beneficiaries, of certain real estate located in Preble County, Ohio under the Last Will and Testament of Milford Eikenberry, Charlene Kingsley's father. Evelyn Marshall is also the personal representative of the estate of Ethel Eikenberry, Mrs. Kingsley's mother, and she and Charlene Kingsley are the beneficiaries of said estate. In 1991, ninety-nine acres of real estate in Preble County, Ohio was distributed to Charlene Kingsley from the trust established by the Last Will and Testament of Milford Eikenberry. Between April 8, 1991, and September 24, 1991, Charlene Kingsley received a total sum of $210,-000.00 in income by distribution from the Probate Estate of Ethel Eikenberry.

Upon obtaining its judgment against the Kingsleys, Agribank caused a copy of the Order of Summary Judgment to be filed in the Preble County Common Pleas Court, Preble County, Ohio (Case No. 92–CV 021496) on August 14, 1992. Agribank also filed its interrogatories to garnishee and requested the Court to grant an Order of Garnishment in the Lawrence County lawsuit, garnishing any money accounts held for the debtors at the First National Bank, Mount Vernon, Missouri and the Mercantile Bank of Springfield, Missouri. Such Order of Garnishment was issued on August 19, 1992.

Debtors filed a motion to appeal the default summary judgment, out of time, with the Missouri Court of Appeals on October 29, 1992, and that motion was denied on November 6, 1992. Debtors then filed a motion to set aside the default judgment with the Circuit Court of Lawrence County, Missouri (Case No. 387–264CC) on December 15, 1992. On July 16, 1993, the Circuit Court of Lawrence County, Missouri denied debtors' motion to set aside the default judgment.

Agribank obtained an Order of Attachment Lien on real estate on September 11, 1992. Based on the Missouri judgment, Agribank obtained a judgment in Preble County, Ohio under an Order of Judgment dated December 1, 1992, issued by the Court of Common Pleas of Preble County, Ohio in the original amount of $387,148.38. Agribank filed a Certificate of Judgment for Lien Upon Lands and Tenements in the Court of Common Pleas of Preble County, Ohio on December 1, 1992. Agribank also is a beneficiary under an Order of Attachment dated September 11, 1992, and directed to the estate of Ethel Eikenberry, pending in the Probate Court of Preble County, Ohio, which created a lien upon all real and personal property in the probate estate belonging to or to be distributed to the debtors. It also obtained an Order of Garnishment on all of debtors' stock and bank accounts on February 26, 1993.

After obtaining the Order of Attachment in Ohio, Agribank took the deposition of Mrs. Kingsley's sister, Evelyn Marshall. In the course of the deposition, Agribank learned of Mrs. Kingsley's interest in a ninety-nine acre tract which had been received from a trust established by her late father. Thereafter, on January 12, 1993, which is after Agribank

had obtained its judgment and undertaken execution proceedings, Charlene Kingsley attempted to transfer, by warranty deed, her interest in the ninety-nine acres of Ohio real estate to Mrs. Marshall and Mrs. Marshall's husband, Paul H. Marshall. The warranty deed was signed by both debtors and recorded on January 20, 1993. The debtors have not received any payment for this transfer of property though they claim that they have an oral agreement to receive a sum of $106,-000.00 or real estate of comparable value from Evelyn Marshall.

This third Chapter 12 case was filed on March 16, 1993, to stop a foreclosure sale by Agribank. The schedules and statement of affairs filed by debtors, under oath, failed to disclose the January 12, 1993, attempted transfer of real estate, the alleged agreement to receive $106,000.00 or other real estate in exchange, the interest in the probate estate of Ethel Eikenberry, and various other assets.

Both Agribank and the Chapter 12 trustee in this bankruptcy case moved this Court to dismiss or convert this case to one under Chapter 7 of the Bankruptcy Code. After these motions were before the Court, debtors filed amended schedules with this Court which reflect the existence of the omitted assets. Debtors' amended schedules list the value of Charlene Kingsley's interest in the probate estate of Ethel Eikenberry as $167,-500.00. *See* Schedule B. Debtors' amended schedules also list the value of Charlene Kingsley's interest in 198 acres in Preble County, Ohio as $147,500.00. *See* Schedule B. Those same schedules also indicate that debtors own 1109 shares of Banc One Corporation stock valued at $46,200.00 and 400 shares of B.B. & T. Financial Corporation stock valued at $11,800.00. (the "Stock").

The motions to dismiss or convert were based on § 1208(d) of the Bankruptcy Code. That section reads as follows:

(b) on request of the parties-in-interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

11 U.S.C. § 1208(d). A hearing was held on these motions on July 29, 1993. Finding that debtors had committed fraud in connection with this case, and finding that there were assets available for distribution to creditors, I granted the motions to convert this case to Chapter 7 on that same date. That decision has been affirmed by the United States District Court for the Western District of Missouri. In so holding, I found that numerous misrepresentations had been made both in the original schedules filed with the court, and at the Section 341 Meeting of Creditors. Those misrepresentations included the omission of specific assets and transfers from the bankruptcy schedules including: (1) the purported transfer of property within 90 days prior to filing of this latest bankruptcy; (2) the interest in the probate estate in Ohio; (3) $210,000 in cash and other personal property distributed to Mrs. Kingsley from the estates of her parents; (4) monies held in a bank account; (5) loans or gifts to debtors' sons; (6) a contract for deed with a certain "Mr. Curtis;" (7) the interest in a motor home and a ½-ton truck; and (8) rental income from a farm house. These assets were not disclosed in the original filing even though there was a specific request for such information in the schedules and statements of affairs. I further found that the misrepresentations were material, and were made with the knowledge, intention, and purpose of deceiving Agribank and this Court.

Agribank filed a Complaint Objecting to the Discharge on September 14, 1993, pursuant to 11 U.S.C. § 727(a)(2), (4), and (5). Likewise, Danny R. Nelson, the Chapter 7 trustee, also filed a Complaint Objecting to the Discharge, followed by a motion to consolidate the two adversary proceedings. No timely response was filed by debtors, and the Court granted the motion to consolidate on November 9, 1993. On November 8, 1993, Agribank moved for summary judgment based upon my Findings of Fact and Conclusions of Law announced from the bench following the hearing on the motions to dismiss or convert. On December 13, 1993, the Chapter 7 trustee likewise moved for summary judgment on Counts III and IV of his Complaint, which relate to the knowing and

fraudulent making of a false oath in connection with a case. 11 U.S.C. § 727(a)(4)(A). I will consider both motions simultaneously.

## DISCUSSION

Summary judgment is "rendered forthwith if the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056. Plaintiffs claim that because I found fraud in connection with the case, pursuant to 11 U.S.C. § 1208(d), there is no genuine issue of material fact remaining in this adversary, they are entitled to judgment as a matter of law, and debtors discharge should be denied pursuant to 11 U.S.C. § 727(a)(2), (4) or (5). Thus, the issue to be decided is whether a finding of "fraud in connection with the case" under section 1208(d) is sufficient to deny debtors their discharge under section 727(a)(2), (4), or (5).

■ The Code provides that the Court may convert a case under Chapter 12 to a case under Chapter 7 upon a showing of fraud in connection with the case. 11 U.S.C. § 1208(d). A finding of fraud in bankruptcy is a factual matter. *Reinbold v. Dewey County Bank (In re Reinbold)*, 942 F.2d 1304, 1306 (8th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1499, 117 L.Ed.2d 639; *Graven v. Fink (In re Graven)*, 936 F.2d 378, 382 (8th Cir.1991).

■ In order to find fraud, a court must find that five elements have been proven:

1. the debtor made the misrepresentations;
2. that at the time he knew they were false;
3. that he made them with the intention and purpose of deceiving the creditor;
4. that the creditor relied on such representations; and
5. that the creditor was damaged as a result of the misrepresentations having been made.

*Ophaug v. Thul (In re Ophaug)*, 827 F.2d 340, 342 n. 1 (8th Cir.1987). In the hearing on the motion to convert, I found that each of those elements had been shown, and that the debtors had therefore committed fraud in connection with the case.

■ The issue here is whether a finding that the debtors committed fraud in connection with the case precludes relitigation of the fraud element in a discharge case. Although this action is brought under three subsections of Section 727(a), the discharge will be denied if any one of them is applicable. *Mertz v. Rott (In re Mertz)*, 955 F.2d 596 (8th Cir.1992). In making this determination, I must analyze the elements necessary to deny a discharge, determine whether those elements have already been proven, and if so, then determine whether collateral estoppel precludes relitigation of such elements. I find that, as to section 727(a)(4)(A) only, the prior finding of fraud in connection with the case precludes relitigation of that issue, and that the plaintiffs' motion for summary judgment should be granted.

Section 727(a)(4)(A) provides in relevant part as follows:

(a) The court shall grant the debtor a discharge unless—

.　　.　　.　　.　　.

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).

■ In order for the doctrine of collateral estoppel to apply the following four elements must be satisfied: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir.1991); *In re Graven*, 138 B.R. 587, 590 (W.D.Mo.1992).

■ The latter three elements of collateral estoppel are easily satisfied as to section 727(a)(4)(A). The issue of whether the debtor's representations were fraudulent was previously litigated in connection with the motion to convert. The issue was validly determined by this Court, and that determi-

nation has been affirmed by the District Court. And, the finding of fraud was essential to the decision on the motion to convert, because section 1208(d) requires such a finding to grant such a motion. The remaining question concerns the first element, that the determination must have been essential to the prior decision. The Supreme Court has held that "all creditors who have secured fraud judgments, the elements of which are the same as those of the fraud discharge exception, will be exempt from discharge under collateral estoppel principles." *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 658–59, 112 L.Ed.2d 755 (1991). In deciding discharge issues, the standard of proof is the preponderance of the evidence. *Grogan v. Garner,* at 289, 111 S.Ct. at 661. I previously found, using a preponderance of the evidence standard, that the debtors had made knowing and fraudulent misrepresentations in connection with the case. That same standard of proof is required under section 727(a)(4).

■■■ The Code uses the phrase "fraud in connection with the case" in section 1208(d) and the phrase "fraudulently, in or in connection with the case" in section 727(a)(4). An accepted principal of statutory construction holds that unless the context indicates otherwise, words or phrases which have one interpretation in one provision will have the same interpretation when used in another provision. *In re Caldwell,* 101 B.R. 728, 733 (Bankr.D.Utah 1989). Thus, a finding that the intentional misrepresentation of assets and liabilities on the bankruptcy schedules and at the section 341 Meeting of Creditors constitutes fraud in connection with the case under section 1208(d), is equivalent to fraudulently misrepresenting assets and liabilities on bankruptcy schedules and at the section 341 Meeting of Creditors under section 727(a)(4)(A).

■■■ In order to deny debtors a discharge under section 727(a)(4), however, I must find that debtors "*knowingly* and fraudulently ... made a false oath or account" in, or in connection with the bankruptcy case. 11 U.S.C. § 727(a)(4)(A) (emphasis added). As previously shown, this Circuit requires, as an element of fraud, that the misrepresentation be a knowing one. I so found at the prior hearing. Therefore, the issue sought to be precluded here is the same as that involved in the prior action, and all requirements for collateral estoppel have been met.[1]

For these reasons, my finding of fraud in connection with the case at the hearing on the Motion to Convert must be given collateral estoppel effect as to Counts III and IV of the Complaint filed by the Chapter 7 trustee, and Paragraphs 4, 5, and 7 of the Complaint filed by Agribank. *Id.* Having made this determination, there is no genuine issue of material fact as to the 727(a)(4)(A) cause of action, therefore, I grant the Chapter 7 trustee's motion for summary judgment as to Counts III and IV of his Complaint, and Agribank's motion for summary judgment as to Paragraphs 4, 5, and 7 of its' Complaint. Debtors' discharge is, therefore, denied pursuant to section 727(a)(4)(A).

An order in accordance with this Memorandum Opinion will be entered this date.

---

1. In passing, I note that plaintiffs also seek to apply collateral estoppel as to their Section 727(a)(2) and (5) counts. The former subsection relates to transfers of property with intent to hinder, delay, or defraud creditors. The latter relates to failure by the debtors to satisfactorily explain any loss or deficiency of assets. Since the decision on the Motion to Convert was based on misrepresentations made in the schedules and at the Meeting of Creditors, there is no basis for applying collateral estoppel to the section 727(a)(2) and (5) counts. *Compare, In re Graven,* 138 B.R. 587 (Bankr.W.D.Mo.1992). Of course, since the discharge is being denied under section 727(a)(4) it is unnecessary to reach these other counts.