**In re Ron Dean BOWMAN, Debtor.**

**Ron Dean BOWMAN, Appellant,**

v.

**BELT VALLEY BANK, Appellee.**

BAP No. MT–93–1914–RAsV.
Bankruptcy No. 92–40868–7.
Adv. No. 92–00138.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Oct. 21, 1994.

Decided Nov. 3, 1994.

Gary S. Deschenes, Great Falls, MT, for appellant.

Leo Graybill, Jr., Great Falls, MT, for appellee.

Before RUSSELL, ASHLAND and VOLINN, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge:

A Chapter 7[1] debtor had his discharge revoked based on fraud and concealment of insurance proceeds. The debtor appeals. We REVERSE.

## I. FACTS

The debtor/appellant, Ron Dean Bowman ("Bowman") received his Chapter 7 discharge on October 1, 1992. On October 19, 1992, the appellee, Belt Valley Bank ("Belt Valley") filed a complaint to revoke Bowman's dis-

---

**1.** Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

charge under § 727(d)(1) and (2), claiming that Bowman committed fraud, concealed property and conducted a continuing scheme to avoid paying Belt Valley's debt.

Belt Valley is a secured creditor of Bowman. Belt Valley holds several promissory notes and security interests in Bowman's farm machinery, tools and equipment.

The § 341(a) meeting of creditors was held on August 19, 1992. At that meeting, Bowman stated that some of his tools may have been stolen and agreed to prepare a list of any stolen tools and file a claim with his insurance company. Belt Valley's security agreement provided that Bowman would insure the collateral and designate Belt Valley as the loss payee. In addition, Bowman agreed to deliver his non-exempt tools to Belt Valley to be sold at an auction.

There is some dispute as to timing, but Bowman did change insurance companies and did not re-designate Belt Valley as the loss payee. Bowman eventually filed a claim with his insurance company. A check for $927 representing insurance proceeds for the stolen tools was sent to Bowman after he received his discharge. The check was held by Bowman's attorney.

On March 23, 1993, a trial was held on Belt Valley's complaint to revoke Bowman's discharge. The bankruptcy court entered an order revoking Bowman's discharge on May 27, 1993. Bowman promptly filed a motion for reconsideration pursuant to Fed. R.Bankr.P. 9023 on June 7, 1993. The bankruptcy court denied Bowman's motion for reconsideration. Bowman timely filed his notice of appeal.

## II. ISSUE

Whether the bankruptcy court erred in revoking the debtor's Chapter 7 discharge based on fraud and concealment of insurance proceeds pursuant to §§ 727(d)(1) and (2).

## III. STANDARD OF REVIEW

■ In reviewing a judgment following a trial, we review the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Tonry v. Security Experts, Inc.,* 20 F.3d 967, 970 (9th Cir.1994).

## IV. DISCUSSION

■ The purpose of a discharge is to "release an honest debtor from his financial burdens and to facilitate the debtor's unencumbered 'fresh start'". *In re Pelkowski,* 990 F.2d 737, 744 (3d Cir.1993) (citing *Kokoszka v. Belford,* 417 U.S. 642, 645–46, 94 S.Ct. 2431, 2433–34, 41 L.Ed.2d 374 (1974)). In limited circumstances, the debtor's discharge may be revoked; however, revocation is an extraordinary remedy. *In re Trost,* 164 B.R. 740, 743 (Bankr.W.D.Mich.1994).

The grounds for revocation of a debtor's discharge are set forth in § 727(d). That section provides:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

. . . .

11 U.S.C. § 727(d)(1) & (2).

■ The Ninth Circuit has held that revocation of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge. *In re Adeeb,* 787 F.2d 1339, 1342 (9th Cir.1986). "To revoke a discharge under § 727(d), the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known." *In re Edmonds,* 924 F.2d 176, 180 (10th Cir.1991). In order to effectuate revocation under § 727(d), such fraud must be discovered *after* discharge. *In re Dietz,* 914 F.2d 161, 163 (9th Cir.1990).

■ Under Fed.R.Civ.P. 9(b), "[in] all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

stated with particularity." Federal Rule of Civil Procedure 9(b) is made applicable to bankruptcy proceedings through Fed. R.Bankr.P. 7009. The burden of proof for objections to discharge is the ordinary preponderance of the evidence standard. *In re Lawler,* 141 B.R. 425, 429 (9th Cir. BAP 1992); *see also In re Serafini,* 938 F.2d 1156, 1157 (10th Cir.1991).

### 1. *Section 727(d)(1)*

 As a general rule, to obtain relief under § 727(d)(1), the plaintiff must prove that the debtor committed fraud in fact. *Edmonds,* 924 F.2d at 180. The fraud must be proven in the procurement of the discharge and sufficient grounds must have existed which would have prevented the discharge. *In re Topper,* 85 B.R. 167, 169 (Bankr. S.D.Fla.1988). The plaintiff must also prove that it was unaware of the fraud at the time the discharge was granted. *Id.*

 If a creditor or any other party which might object to a debtor's discharge has knowledge of a possible fraud, the burden is on the objecting party to diligently investigate any possibly fraudulent conduct before discharge. If the party decides to wait until after discharge, that party risks dismissal of its § 727(d)(1) action. *See Mid–Tech Consulting, Inc. v. Swendra,* 938 F.2d 885, 888 (8th Cir.1991).

 In this case, the bankruptcy court found that the fraud committed by Bowman was his failure to provide Belt Valley with a list of stolen tools or the insurance claim, and his alleged silence concerning such facts until after his discharge was granted. The debtor correctly argues that neither the list of stolen tools nor the insurance claim would have given Belt Valley reason to object to his discharge. Those items do not evidence a fraudulent intent to procure a discharge.

While the debtor's mere silence could, in some circumstances, amount to fraud, it would still fall short of the fraudulent conduct that courts have required for purposes

of § 727. *In re Kingsley,* 162 B.R. 249, 254 (Bankr.W.D.Mo.1994) (intentional misrepresentation of assets and liabilities on bankruptcy schedules and at meeting of creditors constituted fraud under § 727(a)(4)(A)). Bowman's alleged silence does not indicate any fraudulent intent to procure a discharge.

In addition, the record is sufficiently clear that Belt Valley had ample notice prior to the granting of Bowman's discharge that tools might be missing and that an insurance claim might be filed. Counsel for Belt Valley was present at Bowman's § 341(a) meeting of creditors, at which time Bowman testified that the tools might have been stolen and that he intended to report any loss to his insurance company.

Even if Belt Valley were correct concerning Bowman's conduct, it does *not* have a sufficient basis to object under § 727(d)(1).[2] It might have a claim under § 523(a) for a determination as to the dischargeability of Bowman's debt to Belt Valley; however, there is absolutely no evidence that Bowman procured his discharge through fraud. In fact, the evidence produced by Belt Valley at the trial was minimal. Belt Valley's only witnesses were a vice-president of Belt Valley and Bowman's brother, who testified that Belt Valley, under the security agreement, had a right to be listed as a loss payee, and that in fact they were not so listed on Bowman's insurance. The testimony also showed that at some point Bowman received a check and turned it over to his attorney.

### 2. *Section 727(d)(2)*

 As a general rule, a plaintiff must prove that the debtor acquired or became entitled to acquire property of the estate and knowingly and fraudulently failed to report or deliver the property to the trustee, in order to obtain relief under § 727(d)(2). Both elements must be met and the plaintiff must prove that the debtor acted with the knowing intent to defraud. *In re Yonikus,* 974 F.2d 901, 905 (7th Cir.1992).

---

**2.** Belt Valley's complaint with one exception does not state a cause of action under § 727(d). The one exception dealt with the alleged concealment of a Ford 1½ ton truck. The bankruptcy court overruled that allegation. Even if the other allegations were true, it still does *not* state a cause of action under § 727(d).

In its order revoking Bowman's discharge, the bankruptcy court stated that Belt Valley has "shown by a preponderance of the evidence that the Debtor obtained a discharge through fraud and fraudulently failed to report acquisition of property to the Trustee, thereby warranting a revocation of the discharge." There is no evidence of a failure by Bowman to report any acquisition of property to the trustee. In fact, such a failure was not even alleged in Belt Valley's complaint.

The real issue appears to be the fact that the insurance proceeds for the stolen tools were not listed on Bowman's schedules, that Belt Valley was not named by Bowman as a loss payee after he changed insurance companies, and that the insurance proceeds were eventually paid to Bowman. There is no evidence that, at the time of filing the case, any tools were stolen and Bowman had any knowledge at that time of any theft. More specifically, there is no evidence as to when Bowman received the check for the insurance proceeds or whether he attempted to conceal the check's existence from the trustee.[3] There is simply no basis for revocation of Bowman's discharge under § 727(d)(2).

## V. CONCLUSION

The bankruptcy court erred in revoking Bowman's discharge. Belt Valley failed to prove fraud in the procurement of the discharge under § 727(d)(1) or any fraudulent intent under § 727(d)(2). Accordingly, we REVERSE the order and the separate judgment revoking Bowman's discharge.

---

**3.** Belt Valley's claim, if any, against the insurance proceeds, has nothing to do with revocation of Bowman's discharge under § 727(d)(2). As previously stated, the debtor turned the check over to his attorney, who is apparently still holding the check.