In re Muthukumaran KALIANA, Debtor.

STATE BANK OF INDIA, Plaintiff,

v.

Muthukumaran KALIANA, Defendant.

Bankruptcy No. 95 B 9323.
Adversary No. 96 A 00109.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 27, 1996.

John W. Moore, Chicago, IL, for Plaintiff.

Gregory K. Stern, Gregory K. Stern, P.C., Chicago, IL, for Defendant.

Brenda Porter Helms, Raleigh, Helms & Finke, Chicago, IL, for Trustee or Other Attorneys.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the First Amended Complaint to Revoke Discharge filed by State Bank of India (the "Bank") pursuant to 11 U.S.C. § 727(d)(1), and the motion for directed findings made at trial by the debtor, Muthukumaran Kaliana (the "Debtor"), pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporated by reference in Federal Rule of Civil Procedure 52(c). For the reasons stated herein, the Court denies the relief requested by the Bank and will not revoke the Debtor's discharge previously granted under 11 U.S.C.

§ 727. Further, the Court grants the Debtor's motion for directed findings. In addition, this matter is referred to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057(a).

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## II. *FACTS AND BACKGROUND*

Many of the facts and background are undisputed and were stipulated by the parties at trial. This matter concerns a bank account (the "Account") that the Debtor had opened at the Bank's Adayar branch office in Madras, India (the "Madras branch") on August 11, 1984. *See* Bank's Exhibit No. 2. The Debtor was the only authorized signatory on the Account. *See* Bank's Exhibit No. 1. On April 26, 1995, the Debtor transferred 151,143.00 [sic] Indian rupees into the Account (worth approximately $4,980.00). The Bank received this transfer on or about May 8, 1995. *See* Bank's Exhibit No. 5 (p. 1 refers to 150,515.50 rupees deposited that date). On May 9, 1995, the Debtor filed a voluntary Chapter 7 petition. Thereafter on June 15, 1995, the Debtor filed his schedules and statement of affairs, which were amended on November 13, 1995. *See* Bank's Exhibit No. 3.

The Debtor failed to schedule his interest in the Account in either his original or amended schedules. The Bank was listed as a creditor at its Chicago, Illinois branch office (the "Chicago branch"). Its attorney of record in this matter was also listed because he had been representing the Bank in a pending state court action against the Debtor. This litigation involved debts owed by the Debtor on loans extended by the Bank's Chicago branch. Though given notice of the meeting of creditors held pursuant to 11 U.S.C. § 341, no representative of the Bank attended same nor sought an examination of the Debtor under Federal Rule of Bankruptcy Procedure 2004. The Debtor was granted a discharge under 11 U.S.C. § 727 on September 1, 1995.

The Debtor's spouse, Ganthi Muthukumaran, filed a separate Chapter 7 petition, schedules, and statement of affairs on November 13, 1995. *See* Bank's Exhibit No. 4. In the course of reviewing the Bank's files in connection with the spouse's case, G.M. Krishnan ("Krishnan"), the Bank's vice president of credit at the Chicago branch, noticed that there was a copy of a letter dated July 7, 1988 from one of its former managers to the Bank's Madras branch manager requesting that the Debtor be advised of his balance in the Account at a new address. *See* Bank's and Debtor's Exhibits No. 6. Thereafter, in January and February 1996, Krishnan engaged in correspondence with the Madras branch manager regarding the Account, the Chicago branch's loans to the Debtor and his spouse, and other possible assets in India. *See* Debtor's Exhibit Nos. 2–5. The Bank maintains no central registry of depositors for its accounts in its various branches, both foreign and domestic. The Chicago branch was not involved with the opening, maintenance, or any transactions regarding the Account.

Pursuant to the instant complaint the Bank seeks revocation of the Debtor's discharge. The Bank alleges that the Debtor fraudulently failed to schedule the Account into which he made the prepetition deposit and from which he subsequently made withdrawals. The Bank contends that the Debtor's alleged fraud in concealing the Account was unknown and undetected by it until after the order of discharge was entered. In his answer to the complaint, the Debtor denied the substantive allegations of fraud and asserted that the Bank had knowledge of the Account at all relevant times. Further, the Debtor stated that he was of the belief and understanding that any and all funds in which he had an interest had been set off by the Bank against his overdrawn checking account debt.

At trial the Debtor testified that the prepetition deposit into the Account and the post-petition withdrawal in July 1995 was made with his spouse's money drawn from a joint account and intended for use to defray

the medical expenses of a sick relative in India. According to the Debtor, the pressures of his financial and other troubles were so great that he "forgot" to schedule the Account for which he had never received statements from the Madras branch for the relatively few transactions posted thereto. Contrary to his pleaded affirmative defense regarding set-off, the Debtor testified at trial that he did not understand the concept of a bank set-off.

The Debtor's spouse also testified at trial that the prepetition deposit into the Account and the post-petition withdrawal from the Account were made with her funds. She was impeached on this point, however, by her prior inconsistent testimony given in a state court post-judgment citation proceeding. At the conclusion of the Bank's case in chief on November 18, 1996, the Debtor moved for a directed verdict. The Court indicated it would treat the request as a motion for directed findings and reserved ruling.

The principal defense of the Debtor is that the Bank had knowledge of the existence of the Account prior to the granting of the discharge, notwithstanding the lack of any central record keeping. The Bank contends the Debtor's failure to disclose the Account demonstrates that he committed fraud. Moreover, the Bank argues that the 1988 correspondence in the Bank's Chicago branch files, which evidences its knowledge of the existence of the Account, predated its loans to the Debtor, which it did not discover in time to timely object to his discharge under Federal Rule of Bankruptcy Procedure 4004(a). The parties rested without submitting any additional evidence and the Court took the matter under advisement.

### III. STANDARDS FOR REVOCATION OF DISCHARGE

Section 727(d)(1) of the Bankruptcy Code provides in pertinent part:

(d) On request of ... a creditor ... and after notice and a hearing, the court shall revoke a discharge granted ... if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud

until after the granting of such discharge.

11 U.S.C. § 727(d)(1).

■ Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a "fresh start." *See Anderson v. Poole (In re Poole)*, 177 B.R. 235, 239 (Bankr.E.D.Pa.1995) (citations omitted); *In re Flowers*, 55 B.R. 661, 662 (Bankr. M.D.Ala.1985). The revocation provision will be construed strictly against the objector and in favor of the debtor's retention of the discharge. *Mazer v. Jones (In re Jones)*, 178 B.R. 1, 3 (Bankr.D.N.M.1995); *Buckstop Lure Co. v. Trost (In re Trost)*, 164 B.R. 740, 743 (Bankr.W.D.Mich.1994).

■ There appears to be a split of authority regarding the burden of proof necessary to establish the elements of § 727(d). Some courts have held that the movant has the burden of proving all elements by clear and convincing evidence. *See, e.g., Drewes v. Magnuson (In re Magnuson)*, 113 B.R. 555, 558 (Bankr.D.N.D.1989); *Bear Stearns & Co., Inc. v. Stein (In re Stein)*, 102 B.R. 363, 367 (Bankr.S.D.N.Y.1989); *Hunter v. Hall (In re Hall)*, 84 B.R. 472, 474 (Bankr. N.D.Ohio 1987); *Fout v. Reece (In re Reece)*, 73 B.R. 900, 902 (Bankr.N.D.Ohio 1987); *In re Kirschner*, 46 B.R. 583, 586 (Bankr. E.D.N.Y.1985); *Artinian v. Peli (In re Peli)*, 31 B.R. 952, 955 (Bankr.E.D.N.Y.1983). Other courts have held that the movant bears the burden of proving its case by a preponderance of the evidence. *See, e.g., First Nat. Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir.1991) (under § 727(a)); *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (9th Cir. BAP 1994); *Jones*, 178 B.R. at 3; *United States v. Walters (In re Walters)*, 176 B.R. 835, 875 (Bankr.N.D.Ind.1994); *Trost*, 164 B.R. at 744. Some of these courts have opined that the preponderance of the evidence burden, which was held applicable under 11 U.S.C. § 523 challenges to dischargeability by the United States Supreme Court in *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991), should likewise apply to § 727 discharge objections. *See Serafini*, 938 F.2d at 1157; *Jones*, 178

B.R. at 3; *Walters,* 176 B.R. at 875; *Trost,* 164 B.R. at 744. This Court agrees and holds that the proper burden of proof for objections to discharge under § 727(d) is a preponderance of the evidence. The burden of proof lies with the party objecting to the debtor's discharge. *See In re Yonikus,* 974 F.2d 901, 904 (7th Cir.1992); *West Suburban Bank of Darien v. Arianoutsos (In re Arianoutsos),* 116 B.R. 116, 118 (Bankr.N.D.Ill. 1990).

■■■ The first of the two statutory elements the Bank must prove is that the Debtor's discharge was obtained by fraud, and the fraud must be fraud in fact. *Lawrence Nat. Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991); *Donovan v. LaPorta (In re LaPorta),* 26 B.R. 687, 692 (Bankr.N.D.Ill.1982). There must be an intent to deceive. *Jones,* 178 B.R. at 3–4. An intentional omission of assets from the debtor's schedules has been found to constitute fraud supporting revocation. *Reece,* 73 B.R. at 902. For example, a debtor's failure to report and schedule a prepetition personal injury claim as an asset was found to be fraudulent. *See Yonikus,* 974 F.2d at 905–06. The fraud must involve acts that would be grounds for denial of discharge if known prior to the granting of the discharge. *Dietz v. Mitchell (In re Dietz),* 914 F.2d 161, 163 (9th Cir.1990); *NCNB Texas Nat. Bank v. Hayes (In re Hayes),* 127 B.R. 795, 797 (Bankr.E.D.Tex.1991); *Miller v. Ping (In re Ping),* 96 B.R. 96, 97 (Bankr.W.D.Ky.1988); *Govaert v. Topper (In re Topper),* 85 B.R. 167, 169 (Bankr.S.D.Fla.1988); *First Nat. Bank of Harrisburg v. Jones (In re Jones),* 71 B.R. 682, 684 (S.D.Ill.1987). It is fraud in the procurement of the discharge that is the focus of § 727(d)(1), not fraud with respect to the objecting creditor. *Jones,* 71 B.R. at 684.

■■■ The second element requires that the Bank not be aware of the fraud prior to the Debtor's discharge. *Edmonds,* 924 F.2d at 180; *Dietz,* 914 F.2d at 163; *Bowman,* 173 B.R. at 924; *Miller–Claborn Distribution Co., Inc. v. Richard (In re Richard),* 165 B.R. 642, 643 (Bankr.W.D.Ark.1994). The objector need not be aware of all facts of the fraud before the discharge. *Mid–Tech Consulting, Inc. v. Swendra,* 938 F.2d 885, 887–

88 (8th Cir.1991). If the creditor could have known of the alleged fraud, it has an affirmative duty to so investigate before the discharge is granted or the court will dismiss the requested revocation. *Wood v. Cochard (In re Cochard),* 177 B.R. 639, 643 (Bankr. E.D.Mo.1995); *Arianoutsos,* 116 B.R. at 119. The burden is on the creditor to diligently investigate any possible fraud before discharge. *Stein,* 102 B.R. at 367–68. Failure to carry the burden of proving that it lacked knowledge of the fraud prior to the granting of the discharge warrants denial of the objector's cause of action. *Werner v. Puente (In re Puente),* 49 B.R. 966, 968 (Bankr. W.D.N.Y.1985).

## IV. *DISCUSSION*

■■■ The Bank's pretrial brief incorrectly cites to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), and (a)(4)(A) and several cases decided by this Court under those sections for the proposition that they control for purposes of this action based on § 727(d)(1). Contrary to the Bank's arguments, this matter can only proceed under § 727(d)(1) because the Debtor's discharge was issued over four months prior to the filing of the Bank's original complaint. Thus, the Bank's principal authorities are inapposite to the matter at bar, even though the policy under the Code mandates that the Debtor must prepare his schedules with scrupulous honesty and reasonable accuracy.

First, the Bank must prove that the Debtor's discharge was obtained through fraud. The Court holds that the Debtor's failure to reflect his interest in the Account in his original schedules and statement of affairs is indicative of knowing and fraudulent conduct, or, in the alternative, is at least such reckless indifference to the truth, that it constitutes the functional equivalent of fraud. The Court infers fraud by the Debtor from the totality of the evidence adduced at trial. The Court can reasonably infer that those Account proceeds were the Debtor's prepetition property which became property of the estate under 11 U.S.C. § 541 because the Debtor was the sole party in whose name the Account was opened (*See* Bank's Exhibit No. 2) and he was the only party signatory able to withdraw funds in the Account. *See*

Bank's Exhibit No. 1. From the Debtor's continuing concealment and nondisclosure, the Court can easily infer the requisite fraudulent intent. The Debtor's nondisclosure of the Account undoubtedly misled creditors and the case trustee. The fact that the Debtor was under severe financial and other strains, had lost various properties, and was involved in prepetition litigation in other forums does not excuse or vitiate the fraudulent concealment of the Account. The Debtor's situation is a common scenario for many debtors who seek relief in the Bankruptcy Courts nationwide.

The Court flatly rejects as disingenuous the Debtor's testimony and defense that he "forgot" about the Account into which he deposited prepetition a significant sum. After all, he listed several other accounts in financial institutions, and several months later, prior to filing his amended schedules, made a substantial withdrawal from the Account. *See* Bank's Exhibit No. 5. Even if his testimony and the impeached testimony of his spouse is to be believed that the May 1995 deposit was her money, which was withdrawn in July 1995 to pay for the medical expenses of a sick relative, the Account statement shows that there was a previous balance on deposit to the Debtor's credit and that after the July withdrawal there remained a balance on deposit to his credit. Frankly, it strains credulity past the breaking point for the Court to believe that the Debtor, a licensed physician and an obviously well-educated man, conversant in at least two languages, completely forgot about the existence of the Account in which he had the equivalent of thousands of dollars on deposit. The Debtor managed to take steps to withdraw funds from the Account during the pendency of his case, prior to discharge, without amending his schedules post-discharge to reflect the existence of the Account.

The Court also rejects the Debtor's second affirmative defense, as pleaded in his answer, that because his checking account with the Bank was overdrawn he was of the belief and understanding that any and all funds in other accounts in which he had an interest had been set off against the overdraft. At trial the Debtor clearly demonstrated on redirect examination that he does not understand a bank set-off. Such pleaded defense also directly conflicts with the undisputed fact that the Debtor made a withdrawal from the Account several months post-petition, approximately four months prior to amending his schedules after discharge. Had there been a set off, how could the subsequent withdrawal have been accomplished and why would the Debtor even make such an attempt? Accordingly, the Court finds that the preponderance of the evidence shows that the Debtor fraudulently omitted to report the existence of the Account which contained proceeds that became a part of the estate, even if some of the Account proceeds truly were those from his spouse. Thus, the Bank has met the first element under § 727(d)(1).

■ Next, the Bank must show that it did not know of such fraud until after the discharge was granted. The Court finds in favor of the Debtor with respect to this element. The Court concludes that the Bank, as a single corporate entity, had knowledge of the existence of and amount on deposit in the Account prior to the granting of the discharge. Notwithstanding its argument that its Chicago branch is operated pursuant to the Illinois Foreign Banking Office Act, 205 ILCS 645/1 *et seq.*, and that for whatever reason it lacks a central registry or data bank regarding all its customers' accounts and loans, the Bank is one large corporation with multinational branches, each of which are on at least constructive notice of the acts and doings of one another. This result is especially compelling in light of the both parties' Exhibits No. 6, which show that the Chicago branch was aware of the Debtor's interest in the Account as early as 1988. That knowledge put the Bank on inquiry to review its files relating to the Debtor when it received notice of the bankruptcy filing. The information possessed by the Bank should have put it on notice that the original schedules might be false and incomplete. The Court cannot ignore the import and impact of the existence of that letter in the Bank's files at the Chicago branch, even if it predated the subsequent loans made to the Debtor. Krishnan could have and should have looked

a bit farther and sooner in the files than he did. That he delayed until after the Debtor's spouse subsequently filed her case and completed his investigation in 1996 is fatal to the Bank's cause of action under § 727(d)(1). That investigation was neither diligent nor timely.

Based on the evidence, the Court cannot find that the Bank "did not know" of the Debtor's fraud until after the discharge. Thus, the Court holds that the Bank has not met its burden of proof under the second element of § 727(d)(1). Therefore, the Court denies the requested revocation of the Debtor's discharge.

### V. REFERRAL

The above result, though compelled under the above authorities and reasons, produces an unhappy result for the Bank. The result, however, may be somewhat of a Pyrrhic victory for the Debtor. It is both unsettling and not particularly satisfactory in what appears to have been a fraud perpetrated upon the Court and the parties in interest, for the Debtor to walk away both discharged and perhaps laughing all the way to the Bank's Madras branch where there may still be funds on deposit which may properly belong to the bankruptcy estate. Certainly there was an ending balance on deposit in the Account sometime in 1996. *See* Bank's Exhibit No. 5.

The Court has the express and independent duty to refer this matter to the United States Attorney for the Northern District of Illinois as required by 18 U.S.C. § 3057(a) whenever reasonable grounds exist for a belief that a violation of the bankruptcy laws has occurred. *See Flushing Savs. Bank v. Parr (In re Parr)*, 13 B.R. 1010, 1020 (E.D.N.Y.1981); *In re Lewis*, 51 B.R. 353, 355 (Bankr.E.D.N.Y.1985). The Court has reasonable grounds to believe that the Debtor may have knowingly and fraudulently concealed such property of the estate in the unscheduled Account in violation of 18 U.S.C. § 152(1); knowingly and fraudulently made a false oath in connection therewith in violation of 18 U.S.C. § 152(2); knowingly and fraudulently made false statements under penalty of perjury in his verified schedules and state-

ments of affairs violative of 18 U.S.C. § 152(3); or committed bankruptcy fraud in violation of 18 U.S.C. § 157(3). Accordingly, a copy of this Opinion and Order shall be transmitted to the United States Attorney for the Northern District of Illinois with the request that the report under 18 U.S.C. § 3057(b) be furnished to the undersigned upon completion of the inquiry into this matter.

### VI. CONCLUSION

For the foregoing reasons, the requested revocation of the Debtor's discharge is denied. Judgment is entered in favor of the Debtor and against the Bank, with costs assessed against the Bank as provided by law. The Debtor's motion for directed findings is granted under Bankruptcy Rule 7052. A copy of this Opinion and Order shall be transmitted to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057(a).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.