In re Myron J. KLOUBEC and Ellen K. Kloubec, d/b/a Kloubec Fish Farm.

No. C00–73 MJM.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Sept. 18, 2001.

Wesley B. Huisinga, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Renee K. Hanrahan, Chapter 7 Trustee.

Michael P. Mallaney, Smith, Schneider, Stiles, Hudson, Des Moines, IA, for Myron J. Kloubec and Ellen K. Kloubec.

H. Raymond Terpstra, II, Terpstra, Epping & Willett, Cedar Rapids, IA, for Farmers Savings Bank of Walford.

Wesley B. Huisinga, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Carol Dunbar, Chapter 12 Trustee.

Carol F. Dunbar, Dunbar & Dunbar, Waterloo, IA, Chapter 12 Trustee.

Janet G. Reasoner, Office of U.S. Trustee, Cedar Rapids, IA.

John M. Titler, Titler & Monroe, Cedar Rapids, IA, for Denny Drahos.

## OPINION AND ORDER

MELLOY, District Judge.

### OPINION AND ORDER ON APPEAL FROM THE BANKRUPTCY COURT

Debtors Myron J. Kloubec and Ellen K. Kloubec, d/b/a Kloubec Fish Farms ("Debtors"), appeal an adverse decision granting the United States Trustee's Motion to Convert Debtors' Chapter 12 bankruptcy proceedings to Chapter 7 based on allegations of fraud.[1] The bankruptcy court determined the Debtors engaged in a systematic scheme to misrepresent their financial profile to the detriment of creditors. In particular, Debtors improperly characterized non-exempt items as exempt, gave family members assets, and allowed family members to take liens on, and security interests in, certain assets. Debtors' actions had the combined effect of preventing secured and unsecured creditors from reaching liquid assets as well as depleting the funds available for creditors. The bankruptcy court concluded Debtors' actions warranted converting the case from Chapter 12 to Chapter 7. Consequently, Creditor/Appellee Farmers Savings Bank's (FSB) Motion to Dismiss for Debtors' failure to qualify as a Chapter 12 farming operation was moot. After hearing arguments and reviewing the briefs and the

---

1. The Honorable Paul J. Kilburg, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa, presiding. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

record in this case, the decision of the bankruptcy court is affirmed.

However, before discussing the Appeal of the United States Trustee's Motion to Convert, the court must first address Appellee FSB's Motion to Designate Additional Item To Be Included In The Record On Appeal, by which FSB seeks to have the bankruptcy court's order granting of summary judgment in favor of the United States Trustee included in the record on appeal. Subsequent to oral arguments in this appeal, the bankruptcy court granted summary judgment for the United States Trustee on three of the five counts listed in the complaint. Specifically, the court granted summary judgment and avoided Debtor Myron Kloubec's disclaimer of inheritance pursuant to 11 U.S.C. §§ 544(b), and 548(a)(1)(B), and avoided the security interest in favor of Nicholas Kloubec in Debtor's Amana stock pursuant to 11 U.S.C. § 544(a). The court hereby grants Appellee FSB's motion and has included the Order Granting Summary Judgment in the record on appeal.

## I. BACKGROUND

Debtors own and operate Kloubec Fish Farms in Iowa County, Iowa, on which they raise a variety of fish for commercial purposes, as well as operate a bait sale business. The principal source of financing for Debtors' ventures is Farmers Savings Bank (FSB) in Walford, Iowa. To secure the financing, FSB took security interests in the fish, implements, machinery, accounts receivable, and personal and real property of the Debtors and their business. Debtors failed to timely make payments on the financing obligations. In April of 1999, FSB obtained a replevin order in state court, Johnson County, Iowa. On August 31, 1999, the day before the state court replevin order was to become effective, Debtors filed a Chapter 12 bankruptcy petition.

Debtors' Plan of Reorganization spawned many objections and revealed irregularities in the Debtors' financial profile. The Schedules listed assets of $1.229 million and liabilities of $1.149 million, failed to list numerous assets, and mischaracterized certain assets. Debtors' own liquidation analysis indicated there was $63,000 available for unsecured creditors, yet the Plan of Reorganization only proposed to pay $30,000 over a three year period. In addition, Debtors failed to file tax returns for 1998 and 1999, compounding the problem of assessing Debtors' financial position.

Pursuant to 11 U.S.C. § 1208(d), the United States Trustee moved to convert Debtors' Chapter 12 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding for reasons of fraud, while Creditor/Appellee FSB sought a Motion to Dismiss. The United States Trustee and FSB based their motions on evidence the Debtors intentionally concealed assets and misrepresented facts to the bankruptcy court. Granting the Trustee's Motion to Convert to Chapter 7, the bankruptcy court examined evidence of Debtor Myron Kloubec's disclaimer of inheritance, unlisted assets held by Debtors Myron and Ellen Kloubec, postpetition loans taken by the Debtors, undocumented transfers of property by the Debtors, and the use of postpetition cash collateral, which was security for the FSB notes, without a separate debtor-in-possession account or court authority. The bankruptcy court determined the indicia of fraud was sufficient to warrant converting the case to Chapter 7.

## II. STANDARD OF REVIEW

This court reviews de novo conclusions of law made by the bankruptcy court. Fed.R.Bank.P. 8013; *In re Martin,*

**176**

140 F.3d 806, 807 (8th Cir.1998). The bankruptcy court's finding of fraud is a factual matter reviewed by this court for clear error. *In re Martin,* 140 F.3d at 807; *Reinbold v. Dewey County Bank,* 942 F.2d 1304, 1306 (8th Cir.1991); *In re Kingsley,* 162 B.R. 249, 253 (Bankr. W.D.Mo.1994). " 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed.' " *In re Hatcher,* 218 B.R. 441, 445–46 (8th Cir. BAP 1998) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The reviewing court may affirm the bankruptcy court on any evidence supported by the record. *Id.* at 446.

## III. ANALYSIS

■ The bankruptcy court converted Debtors' Chapter 12 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding based on evidence of fraud as required by 11 U.S.C. § 1208(d). In particular, the bankruptcy court found the evidence supported the conclusion Debtors made misrepresentations that "were knowingly false and done with the intention of deceiving all interested parties to improve their financial posture at the expense of creditors." *In re Kloubec,* 247 B.R. 246, 258 (Bankr. N.D.Iowa 2000).

■ The bankruptcy court's findings of fact find sufficient support in the record and clearly evidence "a concerted pattern of conduct designed to misrepresent the financial picture of Debtors...." *Id.* at 258. In making this determination, the bankruptcy court examined what have come to be called "badges of fraud," or circumstances and characteristics that assist a court in ascertaining whether Debtors possessed the intent to defraud. A non-exclusive list of these factors include:

1. lack or inadequacy of consideration;
2. the family, friendship or close associate relationship between the parties;
3. the retention of possession, benefit or use of the property in question, although title exists in a another entity;
4. the financial condition of the party sought to be charged both before and after the transaction in question;
5. conveyance of all the debtor's property;
6. secrecy of the conveyance;
7. existence of a trust or trust relationship between the debtor and the person to whom the property was conveyed;
8. the existence or cumulative effect of a pattern of series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors;
9. the instrument affecting the transfer suspiciously states it is in fact bona fide;
10. the debtor makes a voluntary gift to a family member;
11. the general chronology of events and transactions under inquiry.

*In re Cohen,* 142 B.R. 720, 728 (Bankr. E.D.Pa.1992). "[F]raudulent intent may be inferred from the circumstances of the transactions." *In re Graven,* 936 F.2d 378, 383 (8th Cir.1991). The bankruptcy court thoroughly examined Debtors' conduct in light of these badges of fraud and properly concluded Debtors' conduct required conversion to Chapter 7.

### A. Disclaimer of Inheritance

On August 26, 1999, Debtor Myron Kloubec executed a disclaimer of his interest in the estate of his grandfather, William J. Kloubec. (Doc. 8, p. 1207) Debtor filed the disclaimer in probate court the day before filing for Chapter 12 bankruptcy. (Doc. 8, p. 1207). As a result of the disclaimer, Debtor's interest in his grand-

father's estate passed to his two children, Nicholas and Meghan Kloubec, thereby depriving creditors of access to a substantial asset of Debtor Myron Kloubec. The bankruptcy court determined Debtor's disclaimer formed the basis of a fraudulent transfer. *In re Kloubec,* 247 B.R. at 253.

Debtors point to *In re Popkin & Stern,* 223 F.3d 764 (8th Cir.2000), in support of their position that a disclaimer of inheritance is not a fraudulent transfer. While the *Popkin & Stern* facts are closely analogous to the facts of this case, it is not dispositive of the finding of fraud. In *Popkin & Stern,* the debtor disclaimed property from the estate of his mother and the United States Trustee alleged the disclaimer was a fraudulent transfer under Missouri's Uniform Fraudulent Transfer Act. The Eighth Circuit held the debtor's real property disclaimer of inheritance did not constitute a fraudulent transfer and therefore was not subject to the claims of debtor's creditors. *Id.* at 769. As the *Popkin & Stern* court pointed out: "The bankruptcy trustee brought this action not under the federal bankruptcy fraudulent transfer provision, but under Missouri's UFTA. Accordingly, we face a pure question of Missouri law." *Id.* at 769 n. 11. In this case, the U.S. Trustee alleged fraud in the context of the Motion to Convert to Chapter 7 pursuant to 11 U.S.C. § 1208(d). Relying upon *Drye v. United States,* 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999), the bankruptcy court aptly pointed out that state law may not alter a federal statute. *In re Kloubec,* 247 B.R. at 256. Appellee Debtors correctly point out the Eighth Circuit has not "face[d] the question of whether *Drye* carries over to the

federal bankruptcy fraud context. . . ." *In re Popkin & Stern,* 223 F.3d at 769 n. 12. This court need not make that determination in this litigation. It is clear from the record on appeal that prior to disclaiming his interest in the William J. Kloubec estate, Debtor Myron Kloubec waived his right to disclaim by encumbering his interest in that estate.[2] (Doc. 8, pp. 1383–90). Therefore, the only question of state law is whether Debtor waived his right to disclaim the inheritance, as the record indicates he did, and not whether a disclaimer of inheritance qualifies as a fraudulent transfer. Consequently, Debtor's post-waiver disclaimer is not supported by the Eighth Circuit's holding in *In re Popkin & Stern* and Debtor may not receive the benefit of the relation back doctrine that Debtor seeks to use in this bankruptcy proceeding. *In re Popkin & Stern,* 223 F.3d at 769.

Appellant Debtors also make the argument that a debtor who acts on the advice of counsel lacks the fraudulent intent to effectuate a fraudulent transfer. Debtor may lack the requisite fraudulent intent if Debtor reasonably relies on the advice of an attorney. *See In re Ellingson,* 63 B.R. 271, 277 (Bankr.N.D.Iowa 1986). However, when Debtor pledges an interest in an estate that the Debtor later seeks to disclaim the day before filing for bankruptcy, the Debtor may not seek protection under the auspices of advice of counsel. Such a precedent would provide too much protection for a less than forthright debtor, and corrupt the goals of the bankruptcy code. Notwithstanding this conclusion, there is further indicia of fraud

---

**2.** Iowa Code § 633.704(4) provides, in part: "An . . . encumbrance . . . of any property, interest or right . . . made before the expiration of the period in which a person may disclaim as provided in this section, bars the right to disclaim that property, interest, or

right." Additionally, the bankruptcy court's granting of summary judgment on the disclaimer pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B), included in the record on appeal, comports with this conclusion.

to support the bankruptcy court's granting of the Motion to Convert to Chapter 7 even if the disclaimer were legitimate and did not constitute a fraudulent transfer.

### B. Unlisted Assets

The bankruptcy court was left "with an overriding conviction that Debtors intentionally and fraudulently attempted to conceal assets from the Court, the Trustee, and the creditors in this case." *In re Kloubec,* 247 B.R. at 257. The evidence indicated Debtors failed to schedule substantial assets valued approximately between $25,000 and $50,000. (Doc. 8, pp. 718–77, Testimony of Ellen Kloubec; and pp. 1142–52). Debtors neglected to include jewelry, furniture, figurines, contracts, and equipment and machinery. (Doc. 8, pp. 718–77, Testimony of Ellen Kloubec; and pp. 1142–52). In addition, Debtors failed to amend their schedules to reflect an accurate accounting of their financial position impressing the court with "their continued reluctance to be forthright." *In re Kloubec,* 247 B.R. at 257. The bankruptcy court has the unique position of observing the conduct and demeanor of the Debtors through the discovery process and as witnesses. After reviewing the record, this court is not persuaded by the Debtors' arguments that the bankruptcy court's findings of fact and conclusions of law were in error. The evidence supports the bankruptcy court's conclusion that Debtors' clear lack of candor undermined the bankruptcy process and harmed creditors, and such behavior merited conversion of the case to Chapter 7.

### C. Other Acts

#### 1. Dupler Loans

On August 30, 1999, the day before filing for Chapter 12 bankruptcy, Debtor Myron Kloubec purchased a 2000 Ford 550 pickup for $33,175. Debtor traded in a 1996 Dodge which had a trade-in value of $13,250. The Debtor did not take possession of the pickup on August 30, nor did Debtor pay for the pickup. Debtor apparently made arrangements with his mother-in-law, Sandra Dupler, to obtain funds for the balance of the purchase price. The purchase agreement is dated August 30, 1999, a promissory note in favor of Thomas and Sandra Dupler, is dated August 31, 1999, and the funds were transferred by the Duplers to Myron Kloubec on September 2, 1999, two days after filing the Chapter 12 petition. (Doc. 8, pp. 900, 1221–28) The lien on the truck was not noted until September 14, 1999. (Doc. 8, p. 1222). The Schedules filed by the Debtors reflect a $27,000 security interest in favor of Sandra and Thomas Dupler, despite the facts that the funds and lien documents were executed post-bankruptcy petition and the debt on the truck was for $20,999, $6,000 less than the secured interest. Additionally, in an apparent attempt to conceal the Debtors' equity in farm property, Myron Kloubec filed a second mortgage on property the Debtors owned, in the amount of $48,000, in favor of the Duplers as additional security for the pickup. In total, the Duplers have a secured interest of $75,000 in a pickup the Debtors purchased for $20,999.

#### 2. Purchase of Amana Society Stock

Debtor Myron Kloubec purchased 500 shares of Amana Society stock for approximately $25,000 in December of 1998 for the alleged purpose of using Amana land to hunt. Debtor borrowed $11,700 from his mother Evelyn Kloubec, $1,350 from his son Nicholas Kloubec, and $4,600 from his brother Gene Kloubec to finance the purchase. Debtor executed promissory notes to his mother for $15,975 and to his son for $1,350. On March 23, 1999, Debtor executed a broad security agreement

granting his mother a security interest up to $200,000 in the Debtor's share of the William Kloubec estate. (Doc. 8, pp. 1383–1390). This was the same interest Debtor attempted to disclaim the day before filing the Chapter 12 bankruptcy petition. There were no other security agreements regarding the other two loans. Despite the fact that the security interests in favor of Debtor's brother and son never attached and were therefore, never perfected, Debtor lists all three individuals as holding secured claims.

### 3. Property of Nicholas Kloubec

Debtors are holding a number of assets for their 18 year old son, Nicholas Kloubec. Debtors made payments on a pickup truck for their son, yet there was no listing in the Schedules of the transfer. Wages paid to Nicholas were treated as gifts by Debtor Ellen Kloubec. The Schedules list Nicholas Kloubec as the owner of a large gun collection that was given to him by his grandfather when he was ten years old. However, the record does not satisfactorily indicate how he came into possession of the gun collection.

### 4. Cash Collateral

Debtors continued to sell fish and collect accounts receivable after filing the Chapter 12 petition, in direct violation of 11 U.S.C. § 364. The bankruptcy court ordered a debtor-in-possession account opened on October 22, 1999 and prohibited the use of cash collateral. Between the filing of the petition and the opening of the debtor-in-possession account, Debtors used cash collateral without the bankruptcy court's authority and to the detriment of FSB.

### CONCLUSION

The bankruptcy court's exhaustive findings of fact and the conclusion that the Debtors' actions, taken individually and collectively, constitute fraud is supported by the record. It is evident the bankruptcy court did not clearly err in its findings and Debtors' arguments to the contrary are without merit. Debtors' conduct flouts the purpose of Chapter 12 bankruptcy proceedings and warrants conversion to Chapter 7. The court finds no reason to upset the bankruptcy court's findings of fact and conclusions of law.

### ORDER

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.