NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-12-1214-KiDH |
| ) | |
| E. DANIEL BORS, III, ) | Bk. No.   LA-10-55089-PC |
| ) | |
| Debtor. ) | Adv. No.   LA-12-1130-PC |
| _____ ) | |
| ) | |
| SIMONA TANASESCU, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v.  ) | **M E M O R A N D U M**[1] |
| ) | |
| E. DANIEL BORS, III, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on November 15, 2012,
at Pasadena, California

Filed - December 17, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

Appearances:   Appellant, Simona Tanasescu, argued pro se; Michael
Edward Hickey, Esq. of Corrons-Hickey & Hickey
argued for Appellee, E. Daniel Bors, III.

Before: KIRSCHER, DUNN, and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, Simona Tanasescu ("Simona"), appeals an order from the bankruptcy court dismissing her first amended complaint for failure to state a claim to revoke the discharge of appellee, chapter 7[2] debtor E. Daniel Bors, III ("Debtor").  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.   Events leading to Simona's complaint**.

Debtor is one of Simona's former family law attorneys.  The following events are as alleged in a pro se complaint Simona filed against Debtor, the State Bar of California, and four other attorneys in the U.S. District Court, Central District of California, in May 2011.  We limit our recitation of these events to those most relevant to Simona and what led to her adversary complaint against Debtor.

Simona and her husband, Danut Tanasescu ("Danut") (collectively the "Tanasescus") immigrated to the United States from Romania in 1990.  They became U.S. citizens in 1996.

After a visit to California in 1998 on a six-month tourist visa, Simona's sister, Mirela Coroian ("Mirela"), and Mirela's husband, Dorin Coroian ("Dorin")(collectively "Coroians"), wanted to immigrate to the United States, but had no legal means of doing so.  In order to become U.S. citizens, Mirela allegedly blackmailed Danut into divorcing Simona and marrying her in February 2000, after Mirela had filed a "fake" divorce from Dorin in June 1999.  In November 2001, Mirela and Dorin allegedly forced Simona to sign a marriage certificate for a sham marriage to

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

Dorin. Mirela then allegedly forged Simona's signature on Dorin's application for the change of alien status when Simona refused to sign the documents. Despite the divorces and remarriages, the parties continued to live as husband and wife with their original spouses in the Tanasescus' home.

In June 2002, Mirela and Dorin moved out of the Tanasescus' home while remaining in the sham marriages to their in-laws. Simona and Danut continued to live together as husband and wife, and they remained silent about the sham marriages for fear of prosecution.

Mirela later received her green card. Because the parties believed Dorin would soon also receive his green card and the sham marriages would no longer be needed, Mirela consented to divorce Danut and Dorin consented to divorce Simona.

On May 14, 2007, Simona filed a pro se petition for annulment of marriage to Dorin in Riverside County. On June 19, 2007, Dorin's attorney, Matthew M. Kremer ("Kremer"), filed a petition for dissolution of marriage from Simona in San Diego County. On July 2, 2007, Mirela, assisted by attorney Robert K. Johnson ("Johnson"), filed a petition for dissolution of marriage to Danut in Los Angeles County. Simona alleged that Dorin never lived in San Diego and that the San Diego jurisdiction was concocted so Dorin could obtain Kremer's services, "who compromised himself and became the mastermind of a convoluted conspiracy to aid Dorin in further eluding the immigration laws." Simona further alleged that Johnson and Mirela "worked out a scam to avoid serving Danut" with notice of her Los Angeles dissolution petition, which included producing bogus proof of service documents to the court

-3-

and having a process server pretend to serve the papers. According to Simona, attorneys Kremer and Johnson were on a mission to obtain a dissolution judgment, as opposed to an annulment, to "validate" Mirela's sham marriage to Danut so she could further defraud immigration authorities and obtain immigration benefits. In addition to Kremer and Johnson, Simona alleged that the Coroians' scheme to elude authorities and obtain U.S. citizenship was further promoted by another co-conspirator, an "inside court member."

**B.    Facts pertinent to the first amended adversary complaint.**

On July 13, 2007, Simona retained Debtor and E. Daniel Bors, Jr. ("Bors Jr.), father and law partner to Debtor, to represent her in the annulment of her sham marriage to Dorin. After reviewing Simona's dissolution petition filed in Riverside County and Dorin's petition filed in San Diego County, Bors Jr. decided to proceed with Dorin's case and told Simona that he would inform Dorin's counsel of this and file a response for her.

Bors Jr. failed to file a timely response to Dorin's petition on Simona's behalf. A copy of a "Notice of Default" from Kremer, dated September 4, 2007, was allegedly received by Simona's attorneys' office on September 5, 2007. On September 6, 2007, Simona signed a response and request for annulment from Dorin, which Bors Jr. filed on September 14, 2007.

On September 26, 2007, Bors Jr. received a copy of a "Notice of Entry of Default" entered by the San Diego Court. Simona alleged that no entry of default existed on the docket when Bors Jr. filed her response on September 14, 2007, but the request for default, which was stamp-dated September 4, 2007, "reappeared"

-4-

after the court entered her response, and court clerk "M. Thomas mailed the notice of default after she manually altered the date of mailing the notice of default to show September 21, 2007." Ultimately, Simona's response to Dorin's petition existed alongside with the default. A hearing for default judgment against Simona was scheduled for October 15, 2007.

In October 2007, after rejecting her attorneys' advice to amend her request for annulment and accept a dissolution, or to sign a proposed judgment prepared by Kremer, Bors Jr. and Debtor told Simona they would seek to set aside the default and proceed with her request to nullify the marriage to Dorin. Simona claimed that Kremer, Bors Jr., and Debtor then acted in concert for the next seven months to do nothing while the clock was ticking on the six-months statute of limitations for setting aside the default.

Despite Simona's expressed concern to her attorneys about the delay, the default judgment hearing was continued repeatedly until May 12, 2008. During this time, Simona alleged that Bors Jr. and Debtor misled her into believing they had control over the case, while, in reality, they were setting her up to fail by not seeking to set aside the default within the required six-months time frame.

On May 12, 2008, the San Diego Court entered a default judgment of dissolution against Simona. After the hearing, Bors Jr. told Simona that he would seek to set aside the default judgment in two days. After Bors Jr. failed to do as promised, Simona retained a new attorney who moved to set aside the default, but the request was denied as untimely on January 8, 2009.

Danut, who had also retained Bors Jr. and Debtor to represent

-5-

him against Mirela, ultimately ended his relationship with them and retained another attorney, Jeffrey H. Sherter, to represent him in the March 2009 dissolution trial against Mirela. According to Simona, Sherter "acted for his personal gain and became a sellout," taking advantage of Danut's and Simona's position and not helping them expose the truth about the sham marriages and immigration fraud. Ultimately, Mirela was granted a dissolution judgment on March 26, 2009.

In February 2009, after apparently filing a claim in small claims court, Simona filed a Mandatory Fee Arbitration with the Orange County Bar Association to recover attorney's fees she paid to Bors Jr. and Debtor for representing her in the family law case. In an advisory opinion dated July 20, 2009, the bar association found that legal services rendered by the men were of no value to Simona. Bors Jr. was to refund to Simona the $5,000 she had paid in fees, plus the arbitration filing fee of $250.

In October 2009, Simona filed suit in Orange County ("State Court Action") against Bors Jr., Debtor, and Kremer for their alleged misconduct in the family law case, asserting claims for legal malpractice and fraud. Simona eventually filed a third amended complaint in the State Court Action in September 2010.

**C. The motion to reopen, the first amended adversary complaint, and the motion to dismiss.**

Debtor filed a chapter 7 bankruptcy case on October 20, 2010. In his Schedule F, Debtor listed Simona as a creditor of a "Mal Practice, Fraud Lawsuit," i.e., the State Court Action, "case no. 30-2009-00310563," with a value of "$0.00." Simona's address was listed as "1100 Irvine Blvd., # 595, Tustin, CA, 92780." In his

-6-

Statement of Financial Affairs ("SOFA"), Debtor listed the pending State Court Action and a small claims action (case no. 30-2010-00380508-SC-SC-HLH) Simona had filed against him in 2010, which was apparently consolidated with the State Court Action.

The Bankruptcy Noticing Center's Certificate of Service reflects that Simona was served with the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines ("Notice") at the Irvine Blvd. address. Creditors were given until January 25, 2011, to file complaints objecting to Debtor's discharge or to determine the dischargeability of certain debts. No complaints were timely filed. Debtor received a discharge on February 19, 2011, and his bankruptcy case was closed on March 4, 2011.

Meanwhile, in response to a demurrer filed by Bors Jr. in the State Court Action, the Orange County Court issued a Minute Order on November 30, 2010, dismissing with prejudice Simona's first claim for malpractice, finding that two prior demurrers had already determined the claim was barred by the statute of limitations. The demurrer as to Simona's second claim for fraud, which the court said was "rambling and repetitive," was nonetheless overruled. Accordingly, Simona's fraud claim in the State Court Action was not dismissed. A final order was entered in January 2011.

**1. The motion to reopen**

On April 27, 2011, Simona moved to reopen Debtor's bankruptcy case under § 350(b), contending that reopening the case was necessary so she could file a "motion to revoke" the "Discharge of this Creditor." Simona argued that Debtor used the bankruptcy case to fraudulently obtain a discharge of her debt, which was

nondischargeable under § 523(a)(2) and (a)(4). Simona claimed she never received the Notice, but that she learned of Debtor's bankruptcy on February 7, 2011, during a case management conference in the State Court Action, after the January 25, 2011 deadline for objecting to discharge had passed. Simona further contended that Debtor had used the discharge of her debt to dismiss the State Court Action on March 7, 2011. Simona's motion identified her address as Irvine Blvd.

Debtor opposed the motion to reopen, contending that Simona showed no legal basis for granting relief. Specifically, Debtor argued that Simona's name and address - the same Irvine Blvd. address used for her motion to reopen - were properly listed on his Schedule F and the creditor mailing list. Therefore, argued Debtor, Simona could not overcome the presumption that a properly listed creditor did in fact receive a copy of the Notice. Attached to the opposition were declarations from Debtor and his bankruptcy attorney, and documents establishing proof of service of the Notice and the discharge notice to Simona.

In the bankruptcy court's tentative ruling, which became its final ruling, the court interpreted Simona's motion to reopen as seeking permission to file a revocation of Debtor's discharge under § 727(d), and reopening the case was unnecessary to file such an action. The court entered an order denying the motion to reopen on May 31, 2011.

**2. The first amended adversary complaint**

On February 3, 2012, Simona, pro se, filed a first amended adversary complaint ("FAC") seeking to revoke Debtor's "Discharge of Plaintiff's Claim" under § 727(d)(1). Simona alleged that

-8-

Debtor co-conspired with Bors Jr. and opposing counsel to deceive her about the family law case so Dorin could prevail. Simona further alleged that her fraud claim against Debtor was covered by § 523, and he and his bankruptcy attorney fraudulently prevented her from learning about the bankruptcy case until February 7, 2011, which was after the deadline for filing a complaint for a determination of the dischargeability of a debt. Therefore, due to their fraud, she missed the opportunity to prove her debt was excepted from discharge under § 523. In short, Simona contended that Debtor seeking bankruptcy relief was fraudulent in itself because it allowed him to escape answering her fraud claim in the State Court Action.

Specifically, Simona alleged that Debtor purposely omitted material information about the State Court Action in his Schedule F, including listing incomplete information about the location where the action was pending and providing an incomplete case number without the suffix codes (30-2009-00310563 as opposed to 30-2009-00310563-CU-FR-CJC), and listing an incorrect date for when her claims were incurred - June 2010 instead of October 2009. Simona alleged that Debtor's fraud was furthered by his failure to notify the Orange County Court and all parties to the State Court Action about the bankruptcy case pursuant to local rule. However, she admitted that Debtor eventually did file the required notice of stay in February 2011.

Finally, Simona alleged that she never received a copy of the Notice. She contended that the Irvine Blvd. address was only a mailing address she used to keep her physical address confidential, and the rented mailbox is maintained by a business

-9-

called Scooters Mailbox, Cards, and Gifts. Simona asserted that the Scooters store was relocated in August 2010, and the new location went under extensive renovations until December 2010, which was during the time the Notice was mailed in October 2010. Simona alleged that due to the relocation/remodel, the Notice never reached her mailbox. The FAC recited § 523(a)(2), (a)(4), (a)(6), and (a)(19)(B)(I) as bases for relief, as well as Civil Rule 60(b) and § 727(d)(1). Attached to the FAC was an invoice from Debtor's law office, the docket from the State Court Action, the Minute Order, and a letter from a representative of the Scooters store.

**3. The motion to dismiss**

On March 1, 2012, Debtor moved to dismiss the FAC under Civil Rule 12(b)(6)("Motion to Dismiss"). He argued that the FAC, filed on February 3, 2012, seeking to revoke his discharge and/or except Simona's claim from discharge, was time barred, as such claims had to be filed by January 25, 2011. Debtor rejected Simona's contention that she never received the Notice at the Irvine Blvd. address, which she admitted to using.

Debtor argued that the FAC violated Civil Rules 8(a) and 10(b) because it was vague, rambled, and failed to set forth the statutory basis for relief or provide a plain statement of her right to relief. Debtor argued the FAC also failed to comply with Civil Rule 9 because it did not set forth with particularity the facts for a fraud claim under § 727(d)(1). Events relating to the background of the State Court Action and Simona's belief of the existence of fraud were insufficient to support a complaint for revocation under § 727(d). Debtor also noted that Simona's

-10-

district court complaint seeking a monetary judgment for a prepetition debt violated the discharge injunction under § 524(a)(2). Attached to the Motion to Dismiss was a request for judicial notice of various documents including: (1) Debtor's bankruptcy petition; (2) the motion to reopen, opposition, and order denying the motion; (3) the Notice; (4) the Certificate of Notice; (5) the discharge notice; (6) the order closing the bankruptcy case; and (7) Simona's district court complaint and its exhibits.

Simona opposed the Motion to Dismiss. In addition to her allegations in the FAC, Simona contended that Debtor, aided by his attorney, abused the bankruptcy laws and "tricked" the bankruptcy court into granting a discharge of her fraud claim. Simona argued, for the first time, that Debtor's "false statements under oath" misled the trustee and the court away from holding a hearing under § 727(a)(12) to determine if the debt relief sought in the State Court Action was of the kind described in § 522(q)(1)(B). The "false statements under oath" committed by Debtor consisted of his incomplete listing of the State Court Action in his Schedule F and his valuing it at $0.00 to make it appear as though it had been dismissed. In Simona's opinion, the State Court Action was a claim of the kind described in § 522(q)(1)(B), and she contended the trustee would have acted pursuant to § 727(a)(12) had Debtor not concealed it. Simona further contended that Debtor benefitted from the help of a "corrupted" inside court clerk who did not post the notice of stay in the State Court Action until 32 days after it was filed on February 3, 2011, all in order to torment and confuse her.

-11-

Simona also argued, for the first time, that the FAC supported a claim for "false claims" under § 727(a)(4)(B). For this, Simona contended that Debtor intentionally omitted the suffix codes from the State Court Action ("CU-FR-CJC") in his SOFA so he could also state a false location where the action was pending (the Small Claims Court as opposed to the Central Justice Center). Simona further contended Debtor falsely stated that her 2010 small claims case against him was dismissed, as opposed to being consolidated with the State Court Action. Finally, Simona argued, for the first time, that these same facts of Debtor misidentifying the State Court Action in his Schedule F and SOFA supported a claim for concealment and mutilated recorded information under § 727(a)(3).

A hearing on the Motion to Dismiss was held on April 3, 2012. The bankruptcy court noted that although the FAC alleged a claim to revoke Debtor's discharge on the grounds that it was obtained by fraud, the substance of the FAC was that Simona's particular debt should be excepted from discharge because she did not receive notice of the bankruptcy case. The court informed Simona that if she did not receive the Notice as she claimed, she could still file a complaint under § 523.

After hearing argument from the parties, the bankruptcy court granted the Motion to Dismiss, dismissing the FAC without prejudice to allow Simona to file an action under § 523, presuming her allegation of not receiving the Notice were true:

> But the facts that are alleged in your complaint do not state a claim for relief under Section 727(d)(1). If they stated a claim for relief at all, it would be a claim that you were denied the opportunity . . . to timely file a complaint objecting to the nondischargeability of your

debt . . . because you did not receive actual notice of the bankruptcy and the deadline within which to file that complaint . . . .

. . .

But I can't find that your complaint that you filed under Section 727(d)(1) states sufficient facts -- contains sufficient facts to state a plausible claim for relief under Section 727(d)(1).

And in fact, the facts stated are more in line with pleading a claim under Section 523(c).

. . .

All right. The Court is going to grant the motion to dismiss this adversary proceeding pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted under Section 727(d)(1). That's without prejudice to the Plaintiff's right to file a complaint under Section 523(c).

Hr'g Tr. (Apr. 3, 2012) 4:21-5:3; 6:4-10; 7:6-11.

On April 5, 2012, the bankruptcy court entered an order granting the Motion to Dismiss under Civil Rule 12(b)(6) and dismissing the FAC without prejudice to Simona filing a complaint under § 523. Simona timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158(b).

## III. ISSUE

Did the bankruptcy court err is dismissing the FAC under Civil Rule 12(b)(6)?

## IV. STANDARD OF REVIEW

We review de novo the dismissal of a complaint for failure to state a claim under Civil Rule 12(b)(6). Ta Chong Bank, Ltd. v. Hitachi High Techs., Am., Inc., 610 F.3d 1063, 1066 (9th Cir.

-13-

2011). De novo means review is independent, with no deference given to the trial court's conclusion. Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010).

## V. DISCUSSION

### A. Standards for dismissal.

Under Civil Rule 12(b)(6), made applicable by Rule 7012, a court must dismiss a complaint if it fails to "state a claim upon which relief can be granted." In reviewing a Civil Rule 12(b)(6) dismissal, we accept as true all facts alleged in the complaint and draw reasonable inferences in favor of the plaintiff. Mayn v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011). However, the court need not accept as true conclusory allegations, unwarranted deductions of fact, or legal characterizations cast in the form of factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.), 536 F.3d 1049, 1055 (9th Cir. 2008).

To avoid dismissal under Civil Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)(quoting Twombly, 550 U.S. at 570). In applying the standards set forth in Iqbal and Twombly, the Ninth Circuit has stated:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

-14-

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). A dismissal under Civil Rule 12(b)(6) may be based on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). Dismissal for failure to state a claim is therefore appropriate if the complaint fails to include factual allegations, either direct or inferential, regarding each material element under an actionable legal theory. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

In reviewing a complaint under Civil Rule 12(b)(6), the court may take judicial notice of public records outside the pleadings, review materials submitted with the complaint, and review documents that are incorporated by reference in the complaint if no party questions their authenticity. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001)(concluding that review of such items does not convert a motion to dismiss into one for summary judgment).

**B.   We cannot consider the claims for relief Simona raised in her opposition to the Motion to Dismiss.**

Simona raises six issues on appeal. However, the only relevant issue is whether the bankruptcy court erred in dismissing the FAC for Simona's failure to state a claim to revoke Debtor's discharge under § 727(d)(1).

Simona attempted to assert several additional claims for relief in her opposition to the Motion to Dismiss that were not raised in the FAC. She continues to assert these same claims on appeal. For example, Simona contended that because Debtor

-15-

misidentified the State Court Action in his Schedule F and/or SOFA, he had concealed and mutilated recorded information in violation of § 727(a)(3) or presented a false claim under § 727(a)(4)(B). These facts could not support either claim.

Simona also contended that had the trustee known about the State Court Action, a motion under § 727(a)(12) could have been filed to determine if the debt relief sought in the State Court Action was of the kind described in § 522(q)(1)(B).[3] The gist of

[3] Section 727(a)(12) provides:

The court shall grant the debtor a discharge, unless –

(12) the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is reasonable cause to believe that –
    (A) section 522(q)(1) may be applicable to the debtor; and
    (B) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

Section 522(q)(1), in turn, provides:

(q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C) and (D) of subsection (p)(1) which exceeds in the aggregate $136,875 if –
    (A) the court determines, after notice and a hearing, that the debtor has been convicted of a felony (as defined in section 3156 of title 18), which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title; or
    (B) the debtor owes a debt arising from –
        (i) any violation of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws;
        (ii) fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or

(continued...)

-16-

§ 727(a)(12) is that a debtor will not receive a discharge if (1) the debtor is subject to § 522(q)(1) - i.e., has elected to exempt property under state law, and (2) the debtor has (a) been convicted of a type of felony that suggests that his bankruptcy filing is abusive, (b) violated certain federal securities laws, or (c) engaged in criminal, intentional, or reckless misconduct leading to the serious physical injury or death of another person in the previous five years. Section 727(a)(12) is irrelevant in this case. Debtor did not take an exemption of any of the types of real property listed in § 522(p)(1)(A)-(D),[4] which is required for a claim under § 522(q)(1). Further, Simona failed to allege facts sufficient to support her contention that the State Court Action constitutes a claim under § 522(q)(1)(B).

---

[3](...continued)
15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933;
(iii) any civil remedy under section 1964 of title 18; or
(iv) any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years.

[4] Section 522(p)(1) provides:

(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $136,875 in value in—
(A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
(B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
(C) a burial plot for the debtor or a dependent of the debtor; or
(D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

-17-

Not only are these additional claims for relief unsupported by fact and/or law, they also cannot be considered as they were not alleged in the FAC. In determining the propriety of a Rule 12(b)(6) dismissal, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)(emphasis in original). "The complaint cannot be amended by the briefs filed by the plaintiff in opposition to the motion to dismiss." Gomez v. Ill. State Bd. of Educ., 811 F.2d 1030, 1039 (7th Cir. 1987) (citation omitted). Thus, the focus of any Civil Rule 12(b)(6) dismissal - both in the trial court and on appeal - is the complaint. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Because Simona did not raise these additional claims for relief in the FAC but, rather, in her opposition to the Motion to Dismiss, the bankruptcy court could not consider them, and neither can we.

At best, the FAC can be considered a complaint seeking revocation of discharge under § 727(d)(1) based upon a determination under § 727(a)(4) that Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy case. Thus, our focus here is whether Simona sufficiently pled a claim to revoke Debtor's discharge under § 727(d)(1) on that basis.

**C.    Revocation of discharge under § 727(d)(1).**

Revocation of discharge is an extraordinary remedy. Bowman v. Belt Valley Bank (In re Bowman), 173 B.R. 922, 924 (9th Cir. BAP 1994). A claim objecting to discharge is construed liberally

-18-

in favor of the debtor and strictly against the objector. <u>First Beverly Bank v. Adeeb (In re Adeeb)</u>, 787 F.2d 1339, 1342 (9th Cir. 1986).

The deadline for requesting revocation of a discharge under § 727(d)(1) is set forth in § 727(e). Section 727(e)(1) allows a creditor to seek a revocation of a debtor's discharge under § 727(d)(1) "within one year after such discharge is granted." Debtor received his discharge on February 19, 2011. Simona filed her FAC seeking revocation on February 3, 2012. Therefore, despite Debtor's assertion, the FAC was timely filed.

Under § 727(d)(1), a court shall revoke a debtor's discharge granted under § 727(a) if the discharge "was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." In short, the creditor must show that "but for the fraud, the discharge would not have been granted." <u>White v. Nielsen (In re Nielsen)</u>, 383 F.3d 922, 926 (9th Cir. 2004). To revoke the debtor's discharge under this statute, the plaintiff must prove by a preponderance of the evidence that the debtor procured the discharge through actual fraud, as opposed to constructive fraud, and that debtor's discharge would not have been granted but for the fraud. <u>Hopkins v. Hugues (In re Hugues)</u>, 349 B.R. 72, 78 (Bankr. D. Idaho 2006) (citing <u>In re Nielsen</u>, 383 F.3d at 925 (citing <u>Bowman</u> with approval and holding that plaintiff must show that fraud procured the discharge rather than merely that "fraud was in the air")).

A finding of fraud in the procurement requires evidence of some conduct that under § 727(a) would have been sufficient grounds to deny debtor's discharge, such as debtor knowingly and

-19-

fraudulently making a false oath in connection with his bankruptcy case. See In re Hugues, 349 B.R. at 78 (citing Devers v. Bank of Sheridan, Mont. (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985)); § 727(a)(4)(A).[5] Thus, to support a claim for revocation of Debtor's discharge, Simona had to show that the fraud in which Debtor engaged would have caused the bankruptcy court to deny his discharge under § 727(a)(4)(A) had it been known at that time. See Tighe v. Valencia (In re Guadarrama), 284 B.R. 463, 469 (C.D. Cal. 2002). "This is because '[t]he focus of § 727(d)(1) is fraud in the procurement of the discharge, not fraud with respect to the objecting creditor.'" Id. (quoting Rezin v. Barr (In re Barr), 207 B.R. 160, 165 (Bankr. N.D. Ill. 1997)(citing State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600, 604 (Bankr. N.D. Ill. 1996))). In other words, Simona had to allege facts for each of the elements that would have supported a denial of discharge under § 727(a)(4)(A) to demonstrate that Debtor's discharge was "obtained through the fraud of the debtor" for purposes of § 727(d)(1). Id. (citing Walton v. Staub (In re Staub), 208 B.R. 602, 606 (Bankr. S.D. Ga. 1997)).

To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that (1) the debtor made a false oath in connection with his bankruptcy case, (2) the oath related to a material fact, (3) the oath was made knowingly, and (4) the oath was made fraudulently. Fogal Legware of Switz. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999). "A false statement

---

[5] Section 727(a)(4)(A) provides that the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.

-20-

is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Id. (citations omitted).

**D.    The bankruptcy court did not err in dismissing the FAC.**

We conclude that Simona failed to allege sufficient facts to establish a cognizable claim that Debtor obtained his discharge by fraud. The primary "fraud" she asserted that occurred in connection with Debtor's case was his manner of listing the State Court Action in his Schedule F. Simona alleged that Debtor intentionally omitted the suffix codes from the case number for the State Court Action, that he intentionally listed an incorrect court location for it, that he improperly valued the State Court Action at $0.00, and that he listed an incorrect date for when her fraud claim was incurred. Whether these actions can be considered a false oath is questionable. We also question whether these facts are even material. In any event, Debtor provided sufficient information about the State Court Action in his Schedule F and SOFA to put the trustee or any creditor on notice of it.

More importantly, Simona failed to allege that but-for these intentional misrepresentations and/or omissions, Debtor would have been denied his discharge. As to Simona's assertion that Debtor intentionally failed to notify the Orange County Court and all parties to the State Court Action about the bankruptcy case, all she alleged was that his failure to timely notify prevented her from bringing an action to except her debt from discharge under § 523, not that but-for Debtor's failure to notify he would have

-21-

been denied a discharge of all of his debts under § 727(a).

To effectuate a revocation under § 727(d)(1), Simona also had to allege facts showing she was unaware of the fraud at the time the discharge was granted. In re Bowman, 173 B.R. at 925 (plaintiff must diligently investigate any possible fraudulent conduct before discharge and "prove that it was unaware of the fraud at the time the discharge was granted."). If the objector waits until after discharge to begin her investigation, she risks dismissal of her § 727(d)(1) action. See Mid-Tech Consulting, Inc. v. Swendra, 938 F.2d 885, 888 (8th Cir. 1991). While Simona contends she never received the Notice, she admitted in the FAC that she learned about Debtor's bankruptcy on February 7, 2011, before he received his discharge on February 19, 2011. Arguably, the facts Simona alleged comprised Debtor's fraud leading to his discharge were known or could have been discovered prior to discharge. Therefore, this admission also defeats her claim under § 727(d)(1).

Despite the many deficiencies in the FAC, clearly what Simona was seeking was an exception to discharge for her debt under § 523, not a revocation of Debtor's entire discharge under § 727(d)(1). Even if Simona were seeking to revoke his entire discharge, the FAC, at best, asserts only a claim that Debtor fraudulently obtained a discharge of her debt. In general, it is not enough that a debtor's fraud rendered one particular debt nondischargeable. For an action under § 727(d)(1), a creditor must allege that the debtor's discharge would not have been granted but-for the debtor's fraud. Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991)(citing

-22-

<u>First Nat'l Bank of Harrisburg v. Jones (In re Jones)</u>, 71 B.R. 682, 684 (S.D. Ill. 1987) and <u>Mfrs. Hanover Trust v. Shelton (In re Shelton)</u>, 58 B.R. 746, 748 (Bankr. N.D. Ill. 1986)). Simona failed to allege any such facts.

Accordingly, we conclude the bankruptcy court did not err in dismissing the FAC for failing to state a claim for revocation of Debtor's discharge under § 727(d)(1).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

-23-