

# FILED

APR 11 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   OR-18-1151-FSKu |
| BIANCA SCHMUNK, | Bk. No.   16-33918-dwh7 |
| Debtor. | Adv. Pro.   17-03007-dwh |
| ROBERT E. MERRILL-COLBERG, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| BIANCA SCHMUNK, | |
| Appellee. | |

Argued and Submitted on March 20, 2019
at Portland, Oregon

Filed – April 11, 2019

Appeal from the United States Bankruptcy Court
for the District of Oregon

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable David W. Hercher, Bankruptcy Judge, Presiding

———————

Appearances:     Appellant Robert E. Merrill-Colberg argued pro se.

———————

Before: FARIS, SPRAKER, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Appellant Robert E. Merrill-Colberg sold a used car to his then-friend, chapter 7[1] debtor Bianca Schmunk. After Ms. Schmunk was involved in a traffic accident that destroyed the vehicle, she ceased making payments to Mr. Merrill-Colberg, instead assuring him that he would be repaid from the proceeds of the insurance coverage and the settlement of a lawsuit against the other driver. In actuality, Ms. Schmunk did not carry comprehensive automobile insurance, and she did not pursue any property damage claim against the other driver. When Ms. Schmunk finally received the settlement money, she refused to repay Mr. Merrill-Colberg.

Mr. Merrill-Colberg obtained a state court judgment against Ms. Schmunk, and Ms. Schmunk filed for bankruptcy protection. He eventually asserted claims under §§ 523(a) and 727(a), but the bankruptcy court found that she lacked the requisite intent to defraud. It also held that

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are the Federal Rules of Civil Procedure.

2

it could not deny Ms. Schmunk a discharge because Mr. Merrill-Colberg's § 727 claim was untimely and the court had already entered the discharge.

On appeal, Mr. Merrill-Colberg points to a number of facts that allegedly demonstrate Ms. Schmunk's fraudulent intent. We discern no clear error in the bankruptcy court's findings. Additionally, the court did not err when it refused to consider his § 727(a) claims. We AFFIRM.

**FACTUAL BACKGROUND**[2]

## A.    Prepetition events

### 1.    Sale of a used automobile to Ms. Schmunk

Ms. Schmunk, Mr. Merrill-Colberg, and his wife were friends who regularly socialized at a bar and attended college football games together.

In late 2011, Mr. Merrill-Colberg loaned Ms. Schmunk his 1995 Honda Accord (the "Vehicle"). He later agreed to sell it to her and created a simple sales contract using a form from a stationery store. The contract reflected a purchase price of $3,879. Ms. Schmunk agreed to pay $150 per month with no interest. The contract provided that Mr. Merrill-Colberg retained a perfected security interest in the Vehicle and required Ms. Schmunk to insure the Vehicle "against all risks."

Mr. Merrill-Colberg and Ms. Schmunk executed the contract in

---

[2] We borrow from the bankruptcy court's detailed memorandum decision. We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

February 2012. They went to the Department of Motor Vehicles together to transfer the Vehicle's title to Ms. Schmunk. While there, Ms. Schmunk told Mr. Merrill-Colberg that she had automobile insurance covering the Vehicle and had proof of insurance. He believed her and did not ask to see the proof of insurance. However, she actually only had liability insurance and did not purchase comprehensive insurance that would cover damage to the Vehicle.

### 2. The automobile accident

In November 2013, Ms. Schmunk was involved in a serious car accident. The Vehicle was a total loss. She had been inconsistent with her payments to Mr. Merrill-Colberg, and when he inquired about missing payments, she informed him that the car was "totaled," but assured him that he would be paid "first" from the insurance payments.

At some point, Ms. Schmunk realized that she would not receive any insurance payment because she only carried liability insurance. The other driver's insurance company contested liability, so she retained attorney Ralph Rayburn to pursue her claims against the other driver. In April 2015, Mr. Rayburn filed a lawsuit on behalf of Ms. Schmunk but did not assert any claim for property damage.

When Mr. Merrill-Colberg continued to press Ms. Schmunk about repayment, she repeatedly assured him that he would be paid from any recovery of the lawsuit.

While that litigation was ongoing, Ms. Schmunk was involved in a second automobile accident involving a different vehicle. She pursued a personal injury claim against the other driver.

### 3. State court judgment

Mr. Merrill-Colberg filed suit against Ms. Schmunk in state court and obtained a judgment for $2,677.85 plus interest. He chose not to pursue garnishment against Ms. Schmunk because of the perceived cost.

When Ms. Schmunk learned of the judgment, she decided that she did not have to pay Mr. Merrill-Colberg anything out of the settlement.

### 4. Settlement proceeds

Ms. Schmunk obtained a $24,000 settlement of the first accident in January 2016 and received a net amount of $4,700. She used some of the money to pay bills, then transferred the remainder – approximately $2,300 – into her boyfriend's account to avoid garnishment by creditors.

In or around August 2016, Ms. Schmunk settled her claims arising from the second automobile accident for $25,000. She received the net balance of approximately $11,745 and again deposited part of that money into her boyfriend's account.

## B. Ms. Schmunk's chapter 7 petition

Ms. Schmunk filed her chapter 7 petition on October 12, 2016. The petition and schedules were rife with inaccuracies. She did not disclose any lawsuits within the past year, despite Mr. Merrill-Colberg's state court

lawsuit, the personal injury cases, and the recent settlements. She failed to include either settlement as income and completely omitted the first settlement. She also failed to disclose income earned from a part-time job. She mistakenly listed a savings account that belonged to her boyfriend.

At the § 341(a) meeting of creditors, Mr. Merrill-Colberg questioned Ms. Schmunk about the settlement. She explained that she had initially intended to pay Mr. Merrill-Colberg but changed her mind after he obtained the state court judgment against her.

## C. The adversary proceeding

The deadline to file a complaint objecting to Ms. Schmunk's discharge was January 17, 2017. Mr. Merrill-Colberg, proceeding pro se, initiated an adversary proceeding on January 10 by filing a two-page, handwritten document and an adversary proceeding cover sheet. Although he did not frame his contentions as legal claims, he explained that he had obtained a $2,677.85 judgment against Ms. Schmunk for her failure to make payments under the contract. He continued:

> From the time of the auto accident, Miss Schmunk told me that she was not able to work, and that my payments for the car were tied up in a settlement that she was expecting "at any time." I was continuously told about the "upcoming settlement" up until the time I filed my Small Claims case in September of 2015.

> At the Meeting of Creditors, Miss Schmunk stated on the

record that she had received her "Settlement" in the amount of $5,000 in January of 2016, and that her Lawyer advised her not to pay my Contract or my Small Claims Debt that I had been awarded. She also stated on the record that she had not paid her 2015 Income Taxes because she "didn't have enough money taken out of her payroll taxes."

My interest in filing the Adversary Proceeding Complaint is that none of the preceding remarks that Miss Schmunk made at the Trustee's Meeting of Creditors make sense to me. I believe that the "Settlement" occurred much earlier than January of 2016, and I believe the Court should allow Miss Schmunk to Amend to the Proof, by Bank Statements, Court Judgement Documents, and/or Insurance Company Payment checks.

Shortly thereafter, on January 23, 2017, the bankruptcy court issued Ms. Schmunk her discharge.

Ms. Schmunk, also proceeding pro se, filed her one-page answer denying "everything" and requesting that the court dismiss the adversary proceeding. She did not assert any affirmative defense.

The bankruptcy court informed Mr. Merrill-Colberg that his complaint did not appear to state a claim on which the court could grant relief, so the court would dismiss the complaint if he did not amend it. On March 22, 2017, Mr. Merrill-Colberg, still proceeding pro se, filed an amended complaint that asserted claims under §§ 523(a)(4), (a)(6), and 727(a)(2)(A). He alleged that (1) Ms. Schmunk converted the settlement

7

funds due to him; (2) the debt arose from willful and malicious injury to his property; and (3) Ms. Schmunk concealed and spent the settlement funds that she had promised to pay him with an intent to hinder, delay, or defraud creditors.

At this point, both Mr. Merrill-Colberg and Ms. Schmunk retained attorneys to represent them in the adversary proceeding. Ms. Schmunk filed a motion to dismiss the claims based on lack of evidence that Mr. Merrill-Colberg was entitled to the settlement proceeds or that she had committed fraud. She did not assert an objection to the timeliness of the § 727 claim. The bankruptcy court granted the motion as to the § 523(a)(4) claim but denied it as to the §§ 523(a)(6) and 727(a)(2)(A) claims.

Mr. Merrill-Colberg (through counsel) then filed a second amended complaint. He asserted a claim for relief under § 523(a)(2)(A), alleging that Ms. Schmunk had repeatedly represented that (1) she had obtained automobile insurance to insure the Vehicle against damage and (2) Mr. Merrill-Colberg would be paid "first" from any money she received as a result of the accident.

He asserted a claim under § 523(a)(6), alleging that Ms. Schmunk knew that Mr. Merrill-Colberg had a security interest in the Vehicle and any settlement proceeds, yet intentionally and wrongfully withheld the money she received and converted it to her own use.

Finally, Mr. Merrill-Colberg asserted a claim for denial of discharge

under § 727(a)(2)(A) because she transferred or concealed the settlement monies with an intent to hinder, delay, or defraud him.

Ms. Schmunk's answer to the second amended complaint did not object to the timeliness of the § 727 claim or assert any affirmative defense.

## D.    Trial and additional briefing

At trial, Mr. Merrill-Colberg testified that when he loaned Ms. Schmunk the Vehicle and later sold it to her, he told her that she needed to insure the Vehicle and protect his interest in it. He also testified that Ms. Schmunk told him when they went to the DMV together that "she had insurance . . . to cover my loss . . . ." However, he did not ask to see proof of her insurance coverage.

Mr. Merrill-Colberg further testified that, after he learned of the accident, Ms. Schmunk repeatedly assured him that "the car was tied up in a lawsuit and that I would be the first one to be paid . . . ."

Mr. Rayburn testified as to his representation of Ms. Schmunk in the personal injury matters. He said that he did not pursue a property damage claim on her behalf because the Vehicle was old and had limited value. He testified that "there just was not a discussion about ever pursuing a property loss on the vehicle." He did not recall Ms. Schmunk telling him that she owed money to Mr. Merrill-Colberg and did not recall advising her not to repay him.

Ms. Schmunk testified that she had purchased only liability insurance

for the Vehicle but did not elect comprehensive insurance "[b]ecause it was too expensive and not worth putting on the car."

She admitted that she told Mr. Merrill-Colberg several times that he would be paid from the insurance settlement. She testified that, after Mr. Merrill-Colberg obtained a judgment against her, she decided "just not to deal with it at that point." She said that if he had not gotten the judgment, she would have paid him. But she also testified that she thought that Mr. Merrill-Colberg "would be paid by the lawyer" and that "it was all one deal."

Ms. Schmunk testified that she deposited $4,500 of the settlement proceeds into her checking account, then withdrew $2,300 the following day and put it into her boyfriend's savings account to avoid garnishment by another creditor. She did the same with the settlement proceeds from the second automobile accident. She did not list any of the settlement proceeds as income on her statement of financial affairs because she did not know that it was considered income. She also did not list repayment of a litigation loan in her statement of financial affairs, because she believed that it was her attorney who repaid the debt.

The bankruptcy court expressed concern that it lacked jurisdiction over the § 727 claim, which was not pled as of the date of discharge. It stated that the letter that Mr. Merrill-Colberg had filed as the adversary complaint did not allege any facts that formed the basis of the current § 727

10

claim. It requested supplemental briefing on the issue.

Mr. Merrill-Colberg contended that the court should correct the discharge order under Rule 9024 (incorporating Civil Rule 60) because the court had indicated that it would hear his § 727 claim. He also argued that Ms. Schmunk did not challenge the timeliness of the § 727 claim and cited *Kontrick v. Ryan*, 540 U.S. 443, 458-60 (2004), for the proposition that the debtor waives any jurisdictional challenge if she fails to assert the affirmative defense that a § 727 claim is time-barred. He contended that, while his initial complaint "did not cite to section 727 or use the words objection to discharge, the complaint raised an issue regarding false oath and thus should have been construed as objecting to Debtor's discharge."

**E.    Decision**

The bankruptcy court issued its letter decision on March 12, 2018, ruling in Ms. Schmunk's favor on all claims.

The bankruptcy court found Mr. Merrill-Colberg and Ms. Schmunk credible and sincere. However, it stated that they "have limited sophistication with respect to financial transactions such as the one at issue here. Many of the issues involved in this action appear to stem from mutual misunderstandings about insurance and secured transactions."

In particular, the court found that Ms. Schmunk was credible. The court stated that she "honestly, though unreasonably, believed that the resolution of the personal-injury claim would also result in payment to

11

Merrill-Colberg for his interest in the destroyed car." It also found "that she honestly intended to pay [Mr. Merrill-Colberg] from the proceeds of the personal-injury settlement." Similarly, with regard to the inaccuracies in her bankruptcy filings, the court found that, "[a]lthough these inaccuracies are troubling and demonstrate carelessness and a lack of the diligence that the bankruptcy code requires of debtors, I find no evidence that Schmunk intended to defraud anyone by omitting the information." It found that she credibly testified that she did not understand that the settlement proceeds were considered income. It also did not believe that she attempted to defraud creditors by hiding information in her statement of financial affairs that she disclosed elsewhere, concluding that "it was an inexcusable but nonfraudulent mistake."

As to the individual claims, the bankruptcy court first held that Mr. Merrill-Colberg did not carry his burden of proof on any of the § 523(a) claims. It noted that there was no evidence that Ms. Schmunk acted willfully or maliciously under § 523(a)(6) and that Mr. Merrill-Colberg abandoned this claim at trial. The court rejected the § 523(a)(2)(A) claim because Mr. Merrill-Colberg failed to prove Ms. Schmunk's intent to deceive him regarding the insurance coverage. Ms. Schmunk also did not fraudulently induce him to refrain from taking collection action by assuring him that he would get paid because (1) she honestly believed that her debt would be resolved by the settlement; (2) she intended to pay him

when she made the statements and only later changed her mind; (3) he had not shown that his reliance on her representation gave rise to any debt; and (4) there was no evidence of damages from forebearance.

As to the § 727 claim, the bankruptcy court concluded that it lacked the authority to deny a discharge that had already been entered and not vacated and that the circumstances did not permit it to revoke the discharge. Thus, it considered whether it should vacate the discharge under Civil Rule 60. It concluded that it did not enter the discharge by mistake: there was no pending § 727 claim because the initial complaint "certainly does not expressly state a claim for denial of discharge. . . . There is nothing in the complaint to suggest that he sought to object to her discharge." It found that Mr. Merrill-Colberg "has not pointed to anything that she said [at the creditors' meeting] that was false. Instead, he now argues that she lied on her schedules and concealed assets before the petition date – claims that do not arise out of any transaction or occurrence discussed in the letter." It rejected his arguments that Ms. Schmunk made false oaths and concealed assets before the petition date.[3]

Finally, the bankruptcy court denied Mr. Merrill-Colberg's request to revoke the discharge, because there was no causal connection between Ms. Schmunk hiding her assets and the entry of discharge.

---

[3] Although Mr. Merrill-Colberg did not assert a § 727(a)(4) claim in his complaints, his counsel raised the issue at trial.

13

## F.     Motion for reconsideration

Mr. Merrill-Colberg filed a motion for additional findings and to alter or amend the judgment under Rules 9023 and 7052. He identified nine issues that were erroneous or required additional findings. The bankruptcy court addressed each contention and amended the disposition only to clarify that the parties were sober enough to understand the terms of the contract when they signed it; the court otherwise denied the motion.

Mr. Merrill-Colberg timely appealed from the judgment and order denying the motion for reconsideration.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1)     Whether the bankruptcy court erred in finding that Mr. Merrill-Colberg did not establish Ms. Schmunk's intent to hinder, delay, or defraud under § 523(a)(2)(A).

(2)     Whether the bankruptcy court erred in holding that it could not deny Ms. Schmunk her discharge under § 727(a) because it had already granted her a discharge and could not vacate or revoke the discharge.

## STANDARDS OF REVIEW

When reviewing a bankruptcy court's determination of an exception to discharge claim under § 523, we review its findings of fact for clear error

14

and its conclusions of law de novo. *See Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009). "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 63 (9th Cir. BAP 1998) (citing *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996)).

In an action for denial of discharge under § 727, we review (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) mixed questions of law and fact de novo. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

"In reviewing a judgment [for discharge revocation] following a trial, we review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo." *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 924 (9th Cir. BAP 1994) (citing *Tonry v. Sec. Experts, Inc.*, 20 F.3d 967, 970 (9th Cir. 1994)).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision

must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001) (citation omitted). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985).

We review for abuse of discretion the bankruptcy court's denial of a motion for reconsideration. *N. Alaska Envtl. Ctr. v. Lujan*, 961 F.2d 886, 889 (9th Cir. 1992).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.     The bankruptcy court did not err in holding that Mr. Merrill-Colberg failed to establish a claim under § 523(a).**

**1.     The court's findings about Ms. Schmunk's knowledge and intent under § 523(a)(2)(A) are not clearly erroneous.**

Mr. Merrill-Colberg argues fourteen points on appeal, largely

alleging factual errors. We find no clear error in the bankruptcy court's determination that Ms. Schmunk lacked the requisite knowledge and intent under § 523(a)(2)(A).

Mental state is an element of Mr. Merrill-Colberg's § 523(a)(2)(A) claim. In relevant part, § 523(a)(2)(A) excepts from discharge debts resulting from "false pretenses, a false representation, or actual fraud . . . ." A creditor seeking to except a debt from discharge based on fraud bears the burden of establishing each of five elements: (1) misrepresentation, fraudulent omission or deceptive conduct; (2) **knowledge** of the falsity or deceptiveness of such representation(s) or omission(s); (3) an **intent** to deceive; (4) justifiable reliance by the creditor on the representations or conduct; and (5) damage to the creditor proximately caused by its reliance on such representation(s) or conduct. *See Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010); *In re Weinberg,* 410 B.R. at 35.

The bankruptcy court did not clearly err when it found that Ms. Schmunk lacked knowledge of falsity and intent to deceive under § 523(a)(2). It heard all of the testimony and was critical of Ms. Schmunk but found that she merely misunderstood the nature of liability insurance. It also found that she intended to pay Mr. Merrill-Colberg from the settlement and incorrectly believed that he would be paid. Evidence in the record supports these findings. There was also contrary evidence, but it is the trial court's job to decide which evidence to believe.

17

Mr. Merrill-Colberg argues that the bankruptcy court erred in finding Ms. Schmunk credible. He contends that she misrepresented or concealed bank accounts, ownership of another car, taxes, income, prepetition litigation and garnishment, gambling losses, and advice from her attorney.

Appellate courts "give singular deference to a trial court's judgments about the credibility of witnesses. That is proper, we have explained, because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (citations omitted). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575; *see* Civil Rule 52(a)(6) (incorporated by Rule 7052).

The bankruptcy court was presented with conflicting testimony. It chose to credit the testimony favoring Ms. Schmunk's position. We cannot disturb these credibility findings.

**2.     Mr. Merrill-Colberg abandoned his § 523(a)(6) claim.**

The bankruptcy court held that Mr. Merrill-Colberg abandoned his § 523(a)(6) claim at trial. We agree. Mr. Merrill-Colberg did not address this issue at trial and omitted it entirely from his post-trial brief, instead only

arguing subsection (a)(2)(A). He also does not appear to raise this claim on appeal, but to the extent any of his fourteen points of error concern § 523(a)(6), we reject it based on his waiver in the bankruptcy court.[4]

## B. The bankruptcy court did not err in declining to consider the objection to discharge under § 727(a).

Mr. Merrill-Colberg argues that the bankruptcy court erred in declining to consider his § 727(a) claim. We discern no error.

### 1. The bankruptcy court did not err by granting Ms. Schmunk a discharge while the original complaint was pending.

The bankruptcy court's decision not to consider Mr. Merrill-Colberg's § 727(a) claim was based in large part on timing.

Section 727(a) provides that the court "shall" grant the debtor a discharge unless certain circumstances exist. Rule 4004(a) implements § 727(a); it provides that "a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." The rule further provides that the court "shall forthwith" enter the discharge when this deadline expires, unless "a complaint . . . objecting to the discharge has been filed and not

---

[4] Even if Mr. Merrill-Colberg had preserved this claim at trial, the bankruptcy court rejected it essentially for the same reasons it rejected his § 523(a)(2)(A) claim. We discern no error.

decided in the debtor's favor." Rule 4004(c)(1)(B).[5]

Section 727(d) permits the court to revoke a previously entered discharge. It provides that, upon request by specified parties, the court "shall revoke" the discharge if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." § 727(d)(1). The statute goes on to provide that a request to revoke the discharge under this subsection must be made within one year after the discharge is granted. § 727(e)(1).

### a. The bankruptcy court correctly determined that vacatur or revocation of the discharge were Mr. Merrill-Colberg's only options.

The first step in the bankruptcy court's reasoning was that, once the court enters a discharge, there are only two ways to attack it: by seeking vacatur under Rule 9024 or by seeking revocation under § 727(d). In other words, a party cannot seek denial of a discharge that has already been granted. *See generally Wright v. Asbury (In re Asbury)*, 250 B.R. 67, 68 (Bankr. D. Md. 2000) ("The granting of a discharge is incompatible with a pending complaint to completely deny a discharge. Therefore, a complaint objecting to discharge may not be maintained after a discharge has been granted, without first seeking to strike the discharge if the Code permits.").

---

[5] Rule 4001(c)(1) specifies other situations in which entry of the discharge should be denied or deferred, but none of those situations are present here.

Mr. Merrill-Colberg relies on the Supreme Court's decision in *Kontrick*, which held that the sixty-day deadline under Rule 4004(a) is waived if not timely asserted as an affirmative defense. He seems to argue that *Kontrick* stands for the proposition that the bankruptcy court may set aside the discharge at any time, so his amended complaints were timely.

In *Kontrick*, the Supreme Court considered whether the time limit imposed by Rule 4004 was "jurisdictional" such that a party cannot waive it. 540 U.S. at 452. The Supreme Court noted that "the filing deadlines prescribed in Bankruptcy Rules 4004 and 9006(b)(3) are claim-processing rules" that, "even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 454, 456. The Supreme Court concluded that when a debtor fails to object to a complaint as untimely before the court decides the case on the merits, it forfeits that defense. *Id.* at 459-60; *see Weil v. Elliott*, 859 F.3d 812, 814 (9th Cir. 2017) (explaining that under *Kontrick*, the one-year deadline to seek a revocation of discharge in § 727(e) is not jurisdictional).

But the question in this case is not whether Mr. Merrill-Colberg's complaint was late under Rule 4004(a). Rather, the question is whether the entry of Ms. Schmunk's discharge changed the substantive legal standard that Mr. Merrill-Colberg faced. *Kontrick* does not apply to that question.

The bankruptcy court's logic is correct. Mr. Merrill-Colberg could not seek a denial of a discharge that was already entered. He had only two

options: vacatur of the discharge under Rule 9024 or revocation of the discharge under § 727(d). To hold otherwise would ignore the substantive differences between §§ 727(d) and (a).

### b. The original complaint did not state a § 727(a) claim.

The bankruptcy court's second step was to hold that there was no basis to vacate the discharge because the court did not make a mistake in entering it.

Civil Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]" "Rule 60(b)(1) . . . grants the power to 'correct judgments . . . which have issued due to inadvertence or mistake.'" *Harvest v. Castro*, 531 F.3d 737, 746 (9th Cir. 2008) (quoting *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958)). This includes vacating a discharge that was entered by mistake. *See Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1466 (9th Cir. 1993) ("The plain language of Rule 60(b) and Bankruptcy Rule 9024 appears to support the court's understanding of its authority [to vacate a discharge].").

The only "mistake" justifying vacatur that Mr. Merrill-Colberg identifies is the fact that the court entered the discharge after he filed his initial, informal complaint that was filed before the deadline to object to the entry of the discharge. The bankruptcy court correctly noted that if he "can

show that his letter was a 'complaint . . . objecting to discharge,' it might follow that her discharge was entered by mistake." The question becomes whether the initial complaint was a complaint objecting to discharge. We agree with the bankruptcy court that it was not.

A complaint must include a jurisdictional statement, "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the type of relief sought . . . ." Civil Rule 8(a) (made applicable in adversary proceedings by Rule 7008). "In the bankruptcy context, we construe a deficient pleading liberally, if the pleading substantially complies with the requirements of a complaint by giving the debtor 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1149 (9th Cir. 2002) (quoting *Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1508 (9th Cir. 1995)).

The bankruptcy court held that the original complaint was not a complaint under § 727 because it "certainly does not expressly state a claim for denial of discharge" and "[t]here is nothing in the complaint to suggest that he sought to object to her discharge."

We agree with the bankruptcy court's conclusion. The initial complaint does not demand denial of discharge. Mr. Merrill-Colberg made clear that he thought that he was owed the $2,677.85 judgment and that Ms. Schmunk repeatedly told him that he would be paid out of the

23

settlement proceeds but later refused to do so on her lawyer's advice. He said that some of Ms. Schmunk's statements at the meeting of creditors did not make sense to him, but he only requested that the bankruptcy court "allow Miss Schmunk to Amend to the Proof, by Bank Statements, Court Judgement Documents, and/or Insurance Company Payment checks." This did not satisfy the requirement of a demand for relief under § 727(a).

Even if we were to ignore the fact that Mr. Merrill-Colberg's initial complaint did not demand a denial of discharge, we note that it also did not state the he was "entitled to relief" under § 727(a)(2)(A). Nothing in the initial complaint referred to § 727(a)(2) or mentioned Ms. Schmunk's deposits of funds in her boyfriend's bank account.[6]

### c. The amended complaints did not relate back to the original complaint.

The bankruptcy court's third step was to consider whether the amended complaints could relate back to the original complaint. The amended and second amended complaints each adequately stated claims under § 727(a). If the claims in the amended complaints properly related back to the original complaint, the bankruptcy court should have treated them as objections to discharge filed before the applicable deadline. If this

---

[6] The closest the initial complaint came to a denial of discharge allegation was the assertion that Ms. Schmunk incorrectly stated the date of her settlement. This might support a claim for false oath under § 727(a)(4). But the bankruptcy court found that her statement was true. Thus, this assertion could not have justified denial of discharge.

were the case, the discharge was entered prematurely. But it is not the case.

Civil Rule 15, made applicable in bankruptcy by Rule 7015, provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" We have stated that:

> In determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim. The basic test is whether the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed; or as a corollary, that in terms of notice, one may fairly perceive some identification or relationship between what was pleaded in the original and amended complaints.

*Gelling v. Dean (In re Dean)*, 11 B.R. 542, 545 (9th Cir. BAP 1981), *aff'd*, 687 F.2d 307 (9th Cir. 1982) (citations omitted). We review de novo whether an amended complaint relates back to the original pleading. *Alfaro v. Johnson*, 862 F.3d 1176, 1179 (9th Cir. 2017).

The Ninth Circuit has considered when an amended § 727 complaint relates back to the original filing. In *Markus*, a pro se creditor objected to the debtor's discharge by way of a motion. She later filed an adversary complaint outside of the sixty-day window mandated by Rule 4004. The Ninth Circuit held that the adversary complaint was time-barred because

25

the motion could not be construed as a complaint. It also said that there was no nexus between the motion and the complaint, so the complaint could not relate back to the filing date of the motion. 313 F.3d at 1149. Rather, it said that "relation back turns on whether the fraud alleged in the . . . complaint is the same as the fraud alleged in the motion." *Id.* at 1150. It concluded that "[t]he fraud averred [in the motion] is a different fraud from the fraud upon which the . . . complaint proceeds. The two conclusory references to 'fraudulent actions' . . . do not signal the distinct particulars that followed in the . . . complaint." *Id.* at 1151.

In *Magno v. Rigsby (In re Magno)*, 216 B.R. 34 (9th Cir. BAP 1997), the BAP similarly considered whether a later complaint alleging a § 523 claim could relate back to the original complaint under § 727 merely because they both referred to the same debt. The panel surveyed bankruptcy cases considering the relation-back of claims and noted that the majority of such cases "held that an amendment can only relate back if the new claim relies on the same facts and does not seek to insert new facts." 216 B.R. at 41. The panel held that the later complaint could not relate back, because the original complaint "did not allege any facts which would have proven the required elements of a 523(a)(6) action." *Id.* at 39. It noted that "a liberal amendment policy that would not require a plaintiff to plead any facts except to mention the words 'claim' and 'discharge' would eviscerate the pleading requirements." *Id.* at 40.

We hold that the amended complaints did not relate back to the original complaint such that the § 727(a)(2)(A) claim was timely. The initial complaint alleged that Ms. Schmunk had received the settlement earlier than disclosed and did not pay her income taxes. The § 727(a)(2)(A) claim in the first amended complaint rested on the allegation that Ms. Schmunk "knew that she owed me a debt, but . . . concealed and spent the settlement money that she was supposed to pay me." The second amended complaint similarly alleged that the "transfer or concealment of settlement monies as alleged above was with the intent to hinder, delay or defraud Plaintiff . . . ." Because these claims do not rely on the same factual basis as the original complaint, they do not relate back to the original complaint.

Accordingly, we agree with the bankruptcy court that no mistake justified vacatur of Ms. Schmunk's discharge.

2. **Mr. Merrill-Colberg did not establish any fraud relating to the court's decision to grant a discharge.**

The final step in the bankruptcy court's reasoning was to consider whether to revoke the discharge under § 727(d).

Section 727(d) provides in relevant part that:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such

27

fraud until after the granting of such discharge[.]

Under § 727(d)(1), "the plaintiff must prove that the debtor committed fraud in fact. The fraud must be proven in the procurement of the discharge and sufficient grounds must have existed which would have prevented the discharge. The plaintiff must also prove that it was unaware of the fraud at the time the discharge was granted." *In re Bowman*, 173 B.R. at 925 (citations omitted). "[R]evocation of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge." *Id.* at 924 (citation omitted).

"For [the creditor] to prove that the [debtors'] discharge was 'obtained through' the fraud, she must at least show that, but for the fraud, the discharge would not have been granted." *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 925 (9th Cir. 2004). In other words, "the fraud must be material, i.e., must have been sufficient to cause the discharge to be refused if it were known at the time of discharge." *Jones v. U.S. Tr., Eugene*, 736 F.3d 897, 900 (9th Cir. 2013).

The bankruptcy court declined to revoke Ms. Schmunk's discharge, holding that "[t]he only possible basis for revocation would be Schmunk's hiding of assets in her boyfriend's account. But that act is not in any way connected to her 'obtaining' her discharge. Even if hiding assets before the petition date can be considered 'fraud,' the claim fails for lack of any causal connection between this prepetition act and the later entry of discharge."

Hiding assets for the purpose of evading garnishment – which is what Ms. Schmunk admitted she did on two occasions – could justify denial of discharge under § 727(a)(2). But revocation of a discharge under § 727(d) requires more than a showing that, if the creditor acted timely, the court would have denied a discharge under § 727(a)(2). The concealment of assets before the petition did not cause the entry of discharge, and there is no evidence that she fraudulently concealed facts from the bankruptcy court: she readily admitted to what she had done when asked and even listed her boyfriend's savings account as her asset in her schedules. *Cf. Cantrell v. Pulis (In re Pulis)*, No. A11-00366-GS, 2013 WL 1338789, at *5 (Bankr. D. Alaska Mar. 29, 2013) (declining to revoke discharge where the debtor "freely admitted the transfer, as well as his failure to specifically disclose it in his bankruptcy papers. Other than the omission of the transfer, there is no evidence of inaccuracy or wrongful conduct").

Nor would Mr. Merrill-Colberg's unpled § 727(a)(4) claim warrant discharge revocation. A false oath under § 727(a)(4) may serve as "fraud" warranting the revocation of discharge. *See Jones*, 736 F.3d at 900. However, the bankruptcy court found that Ms. Schmunk lacked the requisite intent to defraud creditors when she made misstatements and omissions; it held that although the inaccuracies in her bankruptcy filings "are troubling and demonstrate carelessness and a lack of diligence that the Bankruptcy Code requires of debtors, I find no evidence that Schmunk intended to defraud

29

anyone by omitting the information." Because the bankruptcy court found that Ms. Schmunk lacked an intent to defraud creditors, we cannot say that the discharge was obtained through actual fraud.

Accordingly, the bankruptcy court's denial of discharge revocation was not error.

**C.      The bankruptcy court did not err in denying the motion for reconsideration.**

Mr. Merrill-Colberg also appeals from the bankruptcy court's denial of his motion for reconsideration. Although he does not specifically address the motion in his appellate brief, the motion raised nine points that are similar to his arguments on appeal. For the reasons discussed above, we hold that the bankruptcy court did not abuse its discretion in denying the motion for reconsideration.

## CONCLUSION

The bankruptcy court did not err in ruling in Ms. Schmunk's favor after trial and denying the motion for reconsideration. We AFFIRM.[7]

---

[7] At oral argument, Mr. Merrill-Colberg said that he would be satisfied if we arrested and imprisoned Ms. Schmunk. Even assuming that Mr. Merrill-Colberg could prove that Ms. Schmunk committed a crime, neither the bankruptcy court nor this Panel has power to adjudicate criminal charges or impose criminal punishments.